IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff; | § | |
| v. | § | CASE NO. 1:08-cr-00101-001 |
| JOEL FRANCOIS JEAN, | § | |
| Defendant. | § | |

MOTION FOR REDUCTION-IN-SENTENCE
PURSUANT TO
18 U.S.C. § 3582(c)(1)(A)

Comes JOEL FRANCOIS JEAN, Defendant ("Jean"), and submits this motion for a reduction-in-sentence ("RIS" or "Compassionate Release") pursuant to 18 U.S.C. § 3582(c)(1)(A) in light of extraordinary and compelling reasons. Specifically, Jean will show the Fifth Circuit no longer considers his underlying Texas state substance abuse offenses to be proper predicates to the Career Offender guideline. If Jean was to be sentenced today, he would not be considered a Career Offender, thereby lowering his sentencing range from 352-425 months to 160-185 months. Although this change in law has not been deemed retroactive, the Fifth Circuit allows the district court to determine whether non-retroactive changes in law, either standing alone or in conjunction with other reasons, constitute extraordinary and compelling circumstances. Jean submits that this change in law, along with his demonstrated rehabilitative progress and outstanding disciplinary record, warrants a reduction to time-served (i.e., 209 months).

## STATEMENT OF FACTS

[1]    Following a plea of guilty, Jean was convicted on Febru-
ary 23, 2009, of violating 21 U.S.C. § 846 (Conspiracy
to Possess with Intent to Distribute 500 Grams to 5
Kilograms of Cocaine) and 18 U.S.C. § 924(c) (Possession
of a Firearm in Furtherance of a Drug Trafficking Crime).
[Change of Plea Hearing Transcript at 17, ln. 17-25; id.
at 18, ln. 1-5; Exhibit B at 01, § OFF/CHG; id. at 02, §
OFF/CHG].

[2]    Jean was sentenced to 292 months of imprisonment to be
followed by eight years of supervised release. [Sen-
tencing Transcript at 25, ln. 2-6; id. at 26, ln. 5-8;
Exhibit B at 01, § Sentence Imposed; id., § Term of
Supervision].

[3]    His sentence reflected a downward variance of 60 months
(or 17.05%) from a Guideline range of 352 to 425 months.
[Sent. Transcript at 8, ln. 21-22].  The Court varied
downward in order to "avoid unwarranted sentence dis-
parities with the other individuals involved." [id. at
25, ln. 13-14].

[4]    Jean was determined to be a Career Offender in light of
the Court finding his three prior Texas drug crimes to be
"controlled substance offenses." [id. at 7, 17-19].
The predicate offenses were:

> •Possession with Intent to Deliver a Controlled Substance
> (Cocaine), less than 28 grams [see Appendix 3 at 01-02 for
> state indictment and judgment];
>
> •Knowing and Intentional Delivery of a Controlled Substance
> by Actual Transfer (cocaine) [attached to Presentence Report];
>
> •Possession with Intent to Deliver a Controlled Substance
> (Cocaine), less than 28 grams [see Appendix 3 at 03-04 for
> state indictment and judgment].

> [Sent. Transcript at 6, ln. 9-25;
> id. at 7, ln. 1-7].

[5]    Without the Career Offender enhancement, Jean would face
a sentencing range of 180-210 months based on an offense
level of 26 and a criminal history category of VI. [id.
at 11, ln. 12-17 (includes 60 months for 924(c) sentence)].**

---

**All figures include a two-level reduction for acceptance of responsibility.
[Doc. 90 at 16].

[6]    As of October 11, 2022, Jean had served 182 months, or
       62.33% of his sentence.  When factoring in Good Conduct
       Time ("GCT"), Jean had served 209 months, or 71.58%.
       [Exhibit B at 03].

[7]    Jean's current release date is set for June 12, 2028.
       [id. at 01, § The Inmate is Projected for Release].  He
       will be 54 years old. [see id., § Date of Birth: 09-29-
       1973].

[8]    In 2015, Jean had sought, but was ultimately denied, a
       reduction under 18 U.S.C. § 3582(c)(2) in light of a
       retroactive amendment to the United States Sentencing
       Guidelines ("USSG") lowering his offense level.   The
       Court's denial was predicated upon Jean's Career Offender
       status. [Doc. 85 at 01; see U.S.S.G. § Amendment 782
       (2014 Manual)].

[9]    If sentenced  today, Jean would no longer be a Career
       Offender. [see United States v. Tanksley, 848 F.3d 347,
       352 (holding that the Texas statute for Possession with
       Intent to Deliver a Controlled Substance [Section §
       481.112(a) of the Texas Health & Safety Code] is both
       indivisible and inapplicable as a predicate offense sup-
       porting a Career Offender enhancement under U.S.S.G. §
       4B1.1)].

[10]   Lacking the Career Offender enhancement, Jean would be
       eligible, too, for the "Drugs Minus Two" reduction under
       U.S.S.G. § Amendment 782.  By consequence, his original
       sentencing range of 180-210 months [see § 5, supra],
       would be lowered to 160-185 months.

[11]   As stated above, Jean has served 209 months with GCT.
       [§ 6, supra].  If he had been sentenced without the
       Career Offender enhancement, he would have served the
       following percentages of the relevant Guideline range:

              •180 months (Low End) ---> 116.3% served
              •210 months (High End) ---> 99.52% served

[12]   If he had been sentenced without the Career Offender
       enhancement and had received the benefit of Amendment
       782, Jean would have served the following percentages:

              •160 months (Low End) ---> 130.63% served
              •185 months (High End) ---> 112.97% served

[13]   Jean was 33 years old when he was arrested. [Exhibit B
       at 01, § Date of Birth; cf. id. at 02, § Jail Credit
       (FROM DATE)].

[14]    Jean has received only two, low-level incident reports
        in over 15 years: one in violation of code 310 for
        "being absent from assignment" for which he was sanc-
        tioned to "loss of email for 15 days" [Exhibit E, §
        Report Number 2471716 (July 24, 2013)], and the other
        for the same, "being absent from assignment" for which
        he was sanctioned to "loss of commissary for 15 days."
        [id., § Report Number 2597276 (June 23, 2014)].

[15]    Jean has completed 25 education programs, with a 26th in
        progress, for a total of 3,654 hours. [Exhibit C].  Such
        programs include the Building Trades and Welding voca-
        tional trades [id., 720 and 480 hours each, respectively],
        as well as Electric Theory (Basic, Part II, and Advanced),
        Basic Plumbing, Employment Opportunities (a reentry class),
        and Product Development. [id.].  He also has been learning
        Spanish. [id.].

[16]    He similarly has spent more than ten years working for
        UNICOR, where he was described by the Quality Assurance
        Manager as being a "valuable, trustworthy and indispen-
        sable asset." [Appendix 4 at 01].  Similarly, his Fabric
        Work Supervisor submitted Jean has become a "consistent
        and indispensable employee [who]...is counted upon to
        perform advanced business equations, statistical and
        problem solving techniques with a high degree of pre-
        cision..." [id. at 02].

[17]    Yet, Jean left UNICOR in order to focus on his specialty:
        Heating, Ventilation, and Air Conditioning ("HVAC").
        Specifically, he has dedicated 1,918 hours towards
        advancing his understanding of HVAC [Exhibit C, § Air
        Conditioning / Refrig], and has supplemented this pur-
        suit with lateral studies of electricity, plumbing, and
        welding. [id., generally].

[18]    He currently is focusing on his apprenticeship in HVAC,
        where he has gained knowledge and certifications to
        carry forth into the world outside prison. [id.; also
        see Appendix 2 at 01-02; id. at 21-23].**

[19]    Jean also has earned his Associate of Applied Science
        degree in HVACR (including refrigeration). [id. at 02].
        He completed 32 collegiate hours with a 4.0 grade point
        average [id. at 01, showing "Dean's List" each semester],
        and his degree was "[c]onferred [on] May 18, 1996." [id.].

---

**Appendix 2 at 21-23 includes Jean's certification for Technician Type Uni-
versal, and his course completions in Major Appliance Service Technology and
Heating, Ventilation, Air Conditioning & Refrigeration. [id.].  He includes
these to substantiate the depth to which he has pursued this field, as well as
the validity of his certification. [see Appendix 3 at 21, showing this had
been forwarded to FCI Three Rivers for Jean to utilize while performing HVAC
work there].

[20]   Jean has been assessed by the Bureau of Prisons under
       its new recidivism metric, the Prisoner Assessment Tool
       Targeting Estimated Risk and Need ("PATTERN"), to need
       no further substance abuse treatment. [see Exhibit F,
       § Drug Program Status: No need].

[21]   Jean's criminal history reveals one isolated and minor
       act of violence, occurring prior to his imprisonment.
       [Exhibit D, § Violence: > 10 YRS MINOR]. This event
       involved a scuffle in the parking lot of Jack-in-the-Box®
       and Jean was cited for misdemeanor assault. His non-
       violent disposition over his lifetime prior to this act,
       and in the 20 years since, reveals this to have been an
       aberration. More importantly for purposes of this motion,
       Jean has not been involved in any acts of violence since
       his imprisonment began more than 15 years ago.

[22]   During the drafting of this motion, Jean successfully
       petitioned the Bureau of Prisons into removing an impro-
       perly lodged "escape" on his Custody Classification form.
       [see Exhibit D, § Escapes: NONE; cf. Appendix 6 at 05].
       The respective dates of October 11, 2022 [Appendix 6 at
       05] and November 07, 2022 [Exhibit D] reveal this change
       to have been recent. Jean similarly sought this change
       to be implemented on his FSA PATTERN score; however, was
       told he must wait until it is rescored in 2023.**

[23]   Jean submitted a request for a sentence reduction to his
       Warden on October 11, 2022, in which he raised the fol-
       lowing issues supporting a reduction: [1] non-retroactive
       change in law by which he would no longer be a Career
       Offender; [2] the disparity between the sentence he
       received and that advised today; [3] his extensive re-
       habilitation efforts and progress, including his achieve-
       ments in HVAC; and [4] his outstanding disciplinary re-
       cord. [Exhibit A].

[24]   Jean points out a discrepancy whereby he had understood
       he was a low level of recidivism. [id.]. This is not the
       case, as his General Score is 43 and his Violent Score
       is 25. [Exhibit F]. Jean points out that his score is
       currently four points away from low, and he has all but
       maximized the amount he can earn through drug treatment,
       programming, and work programs. [id., cf. Appendix 6 at
       4 for scoring matrix]. Moreover, the BOP assigns him
       points in light of his 924(c) charge, which the Bureau
       classifies as "violent" for all prisoners.

---

** Jean submitted this petition via the Bureau of Prisons' Administrative Remedy
program. For the Custody Classification Form, his case manager was able to
implement the change. [see Appendix 6 at 06]. For the FSA Recidivism Risk
Assessment (PATTERN Score), he must await the BOP to update it. [Appendix 6 at 07].

05

[25]   Jean has not heard back from the Warden.

[26]   Along with the reasons presented in his request to the
       Warden, Jean submitted an address where he would reside.
       [Exhibit A, "If granted release, I would reside with my
       mother, Lina Jean, who lives at the following address:
       [address hidden]."].

[27]   He, too, explained how he would support himself:

>           I would support myself [by] entering the field of HVAC.
>           In light of my extensive education and experience over
>           the past 15 years (including multiple certifications
>           and achievements), I am employable at most businesses.
>
>                           [id.].

[28]   He lastly explained how he would obtain medical care,
       by "initially apply[ing] for benefits under the Affordable
       Care Act ("ACA")." [id.].  He explained that once he found
       "successful employment," he would "transfer [his] care to
       a plan offered by [his] employer." [id.].  Jean does not
       see any pressing medical needs, as he devotes attention
       to healthy habits like diet and exercise; and this motion
       is not founded in medical issues.

[29]   Ultimately, Jean has complied with all requisites un-
       derlying the process to seek a reduction in sentence:
       he has submitted a request to the Warden that included
       his reasons for seeking relief; he included the address
       where he would reside; he explained how he would support
       himself; and he provided how he would obtain medical care.
       [Exhibit A].  More than 30 days have passed since October
       11, 2022 (i.e., the date he submitted his request to the
       Warden), and, consequently, this Court now has jurisdic-
       tion to hear this motion.  Administrative remedies have
       been exhausted.

## INTRODUCTION

Joel Francois Jean, after serving over 15 years of a near-
25 year sentence, now seeks a reduction in that sentence to time-
served.  Throughout the years, his attempts at relief have been
unsuccessful; although his initial motion under 28 U.S.C. § 2255
remains pending.

Since his sentencing, several developments in law have manifest,
most recently the change in Fifth Circuit statutory interpretation

wrought via the Tanksley** decision from which Jean's prior Texas
convictions for Possession with Intent to Deliver a Controlled Sub-
stance can no longer support a Career Offender enhancement.   If
sentenced today, Jean's sentencing range would be 160-185 months,
instead of the 352-425 months to which he was subjected in 2009.

        Although this change has not been declared retroactive, the
Fifth Circuit permits a defendant to motion his sentencing court
seeking such relief under 18 U.S.C. § 3582(c)(1)(A) ("Reduction-in-
Sentence" or "RIS" or "Compassionate Release").   The Supreme Court***
recently determined a court may rely upon non-retroactive changes
in law when modifying a sentence.   Jean now opts to present his
case for such a reduction in light of this change in law, the fall-
out therefrom (e.g., no longer being a career offender, resulting
sentence disparities, and more), the 15 years and counting he has
already served, and his extensive rehabilitative progress.

**JURISDICTION**

        The Court has the authority to reduce a sentence to time-served
and to modify the term of supervised release. [United States v.
Shkambi, 993 F.3d 388, 393 (5th Cir. 2021)].   To prevail on a
motion for a RIS, a defendant must exhaust administrative remedies,
show extraordinary and compelling reasons warrant a reduction, and
show such reasons are consistent with applicable policy statements
issued by the United States Sentencing Commission ("USSG"). [United

---

** United States v. Tanksley, 848 F.3d 347, 352 (5th Cir. 2017) (holding Texas
Health & Safety Code § 481.112(a) [Possession with Intent to Deliver a Con-
trolled Substance] is indivisible and broader than a Controlled Substance
Offense, and cannot support a Career Offender enhancement under the Guidelines)

*** Concepcion v. United States, 597 U.S. ___, Syllabus: The First Step Act
allows a district court to consider intervening changes of law or fact in
exercising discretion to reduce a sentence.

States v. Betton, U.S. Dist. LEXIS 46411 (S.D. Miss., Mar. 15, 2022)].
The Court must also consider the sentencing factors in 18 U.S.C. §
3553(a) to the extent they apply. [United States v. Cooper, 996 F.
3d 283, 287 (5th Cir. 2021)].

### APPOINTMENT OF COUNSEL

Jean requests the appointment of counsel via the Federal Pub-
lic Defender or a CJA appointee pursuant to 18 U.S.C. § 3006A.

### ADMINISTRATIVE REMEDIES

Jean has exhausted all administrative remedies.  On October 11,
2022, he submitted a request to the Warden of FCI Beaumont Low
seeking a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).
[Exhibit A].  More than 30 days have passed since his request.
[United States v. Anderson, 2022 U.S. App. LEXIS 15923, *3 (5th
Cir., June 09, 2022)].

### EXTRAORDINARY AND COMPELLING REASONS

Jean submits the following factors, either combined or stan-
ding alone, establish extraordinary and compelling circumstances
warranting a sentence reduction: [1] the non-retroactive change in
law whereby he would no longer be a Career Offender if sentenced
today; [2] the sheer length of his sentence; [3] the disparity
between his original sentence and that advised today; [4] the
length of time he has served; and [5] his individual circumstances,
including his rehabilitative efforts and progress.

The Fifth Circuit leaves to the district court to consider,
in the first instance, what factors, either alone or in conjunction
with any other applicable considerations, constitute extraordinary
and compelling reasons to reduce a sentence. [United States v.

Cooper, 996 F.3d 283, 289 (5th Cir. 2021)].

1.    Non-retroactive change in law

When Jean was sentenced, he had at least two prior offenses
that were utilized to impose a Career Offender enhancement. [Sent.
Transcript at 16, ln. 2-3; see id. at 6, ln. 9-14 for first of
three predicate offenses ("possess or intent to deliver a con-
trolled substance"); see id., ln. 15-22 for second of three predi-
cate offenses ("deliver by actual transfer...a controlled sub-
stance"); see id. at 07, ln. 2-7 for third of three predicate of-
fenses ("possessing with intent to deliver a controlled substance")].
The Court stated the following, following the reading of these pre-
dicate offenses:

> And I've independently determined that the convictions meet
> the definition of a controlled substance offense thereby
> warranting an increase in the offense level,....

[id., ln. 16-19].

From this, Jean's total offense level was increased from 26
to 35 [id. at 08, ln. 12-15; also id. at 11, ln. 12-17], and his
advised range under the USSG was increased from 180-210 months
to 352-425 months. [id.].

Jean's counsel requested for the Court to "give something
along the lines of what he would have gotten without the Career
Offender [enhancement]" [id. at 13, ln. 15-17], while the Govern-
ment sought for the Court to "sentence the defendant within the
guideline range based on the facts of this case." [id. at 17, ln.
21-23].

Prior to having the sentence pronounced, Jean allocuted
the following:

09

> I don't want to even know anybody that has anything to
> do with drugs anymore.  I've learned my lesson.  Just
> please, please, just give me a chance at life after this
> sentence.

[Sent. Transcript at 15, ln. 7-10].

The Court took some time to determine the sentences of Jean's co-defendants, the highest of whom received a sentence of 120 months. [id. at 23, ln. 4-9].  The one who was most akin to Jean in terms of criminal history (i.e., both were in category VI) was sentenced to 87 months. [id.].  In light of these differences, the Court held:

> [T]hat disparity...[t]he Court believes that...a multiple
> of three is an excessive disparity and accordingly deter-
> mines that some adjustment is justified.

[id. at 24, ln. 1-10].

With this in consideration, the Court imposed a sentence of 292 months - or 60 months (17.05%) below the low end of his sentencing range. [id. at 25, ln. 2-6].  The Court stated that this sentence met the "objectives of just punishment, deterrence, and promotion of respect for the law." [id. at 24, ln. 20-22].

In 2017, the Fifth Circuit, in light of the decision in Mathis v. United States [136 S. Ct. 2243 (2016)], revisited whether a conviction under Texas Health & Safety Code § 481.112(a) for Possession with Intent to Deliver a Controlled Substance constituted a Controlled Substance Offense, ultimately deciding it no longer did. [see United States v. Tanksley, 848 F.3d 347, 352].  For Jean, this meant two of the predicate offenses relied upon by the Court in sustaining his Career Offender enhancement were no longer tenable, leaving just one valid prior; and if sentenced today, he would not be enhanced as a Career Offender.

10

Unfortunately, as this was a case of mere statutory inter-
pretation, Jean could not avail himself of the change and be re-
sentenced.  Then came the First Step Act of 2018 ("FSA") and the
Fifth Circuit's holding in United States v. Cooper [996 F.3d 283
(5th Cir. 2021)], which provided:

> We leave for the district court to consider, in the first
> instance, whether...nonretroactive sentencing changes...,
> either alone or in conjunction with any other applicable
> considerations, constitute extraordinary and compelling
> reasons for a reduction in sentence.

[id. at 289].

This holding allows Jean to move the Court for a RIS, and leaves
for the Court to decide whether the non-retroactive change in law
removing his Career Offender status amounts to extraordinary and
compelling.  Jean submits it does.

Other courts have found the Tanksley decision to be extraor-
dinary and compelling, and have reduced the prisoner's sentence.
For example, in United States v. Reyes [2021 U.S. Dist. LEXIS 238866
(W.D.N.C., Dec. 14, 2021)], that court determined extraordinary and
compelling reasons existed due to Reyes no longer being a Career
Offender in light of United States v. Hinkle [832 F.3d 569 (5th Cir.
2016)].[**] Reyes, in fact, is similarly situated to Jean, in that he,
Reyes, was convicted of violating 21 U.S.C. § 846 (Conspiracy to
Possess with Intent to Distribute at least 500 grams of Cocaine)
and 18 U.S.C. § 924(c) (Possessing a Firearm in Furtherance of a
Drug Trafficking Crime). [Reyes at *2; cf. § 1, Statement of Facts,

---

[**] The Tanksley and Hinkle decisions both decided that convictions under Texas
Health & Safety Code § 481.112(a) do not satisfy the Guideline definition
for a Controlled Substance Offense, and are often cited interchangeably.
Tanksley, however, changed the Fifth Circuit's precedent.

supra, showing Jean was convicted of the exact same offenses].
Moreover, both were subjected to similar Guideline ranges: 322 to 387[**]
months for Reyes, and 352-425 for Jean. [Reyes at *3; cf. § 3,
Statement of Facts, supra].

Also, like Jean, Reyes received a downward variance of 62
months [Reyes at *3], resulting in a sentence of 260 months [id.],
while Jean received a downward variance of 60 months [§ 3, Statement
of Facts, supra], resulting in a sentence of 292 months. [id., § 2].
Jean's case and Reyes' case are legal twins.

In reducing Reyes' sentence, the court opined:

> The median sentence for career offenders convicted of murder
> in 2006 was 265 months.

> [Reyes at *10 (citing statistics
> from U.S.S.C., Sourcebook of Federal
> Sentencing Statistics, Table 14: Average
> Length of Imprisonment for Offenders in
> Each Criminal History Category by Primary
> Offense Category, https://www.ussc.gov/
> sites/default/files/pdf/research-and-
> publications/annual-reports-and-sourcebooks/
> 2006/table/table14_0.pdf (last accessed
> October 12, 2022))].

In light of this statistic, Reyes' sentence was essentially that
of a Career Offender convicted of murder, while Jean's exceeded it
by 27 months.  Ultimately, the court in Reyes entered the following:

> Based on the severity and disparity of Reyes' sentence, the
> Court concludes that Reyes has established extraordinary and
> compelling reasons for a sentence reduction.

> [Reyes at *11].

His sentence was reduced to time-served (or 193 months). [id.].

Another court also found extraordinary and compelling reasons

---

[**] Reyes' range is lower because he received a three-point reduction for accep-
tance of responsibility [Reyes at *2], whereas Jean received only two points.

when a prisoner would no longer be a Career Offender today.  In
United States v. Sarratt [2022 U.S. Dist. LEXIS 12558 (W.D.N.D.,
Jan. 24, 2022)], that court found the following:

> Sarratt could not be sentenced as a career offender today.
> The question is whether this fact presents an "extraordinary
> and compelling reason" for a sentence reduction under the
> compassionate release statute. Here...the application of the
> career offender guideline resulted in a far more punitive
> sentence than would be available today. [He] has accordingly
> established "extraordinary and compelling reasons" supporting
> a sentence reduction.

                     [id. at *11].

     Ultimately, the fact Jean would no longer be a Career Offen-
der today constitutes an extraordinary and compelling reason war-
ranting a reduction to time-served.

     2.   Sheer length of his sentence

     Jean's sentence, even with the 60-month downward variance,
still came to nearly 25 years. Without the Career Offender en-
hancement, he would have faced a range of 180-210 months, and
would have been eligible to see his sentence reduced two more
levels to 160-185 months in light of USSG amendment 782. The
difference between his sentence of 292 months and the low end of
today's Guideline sentence is 132 months, or 11 years. When con-
sidering that his co-defendant Lamar (who was also in criminal
history category 6) only received 87 months [Sent. Transcript at
23, ln. 4-9], it is revealed the Career Offender enhancement played
a significant role in the Court's determination of Jean's ultimate
sentence.

     Now that today's sentencing scheme no longer warrants a
Career Offender enhancement for someone is Jean's position, the

                            13

sheer length of the sentence it produced is extraordinary and compelling. For example, in United States v. Cooper [2021 U.S. Dist. LEXIS 210955 (_.D. Tex., 2021)], the court held, "The sheer length of the sentence...[is] extraordinary and compelling." [id. at *7]. In United States v. Cleveland [2022 U.S. Dist. LEXIS 31445 (N.D. Tex., Feb. 23, 2022)], that court stated, "The sheer length of Cleveland's stacked sentences appears facially unjust." [id. at *8].

The sheer length of Jean's near-25 year sentence - which is 11 years longer than what today's sentence calls for - represents an extraordinary and compelling reason in support of a reduction in sentence to time-served.

3. The disparity between his original sentence and that advised today

As detailed in the previous section, Jean's sentence represents 11 years above what the low end of today's sentencing range. The addition of 132 months under a now-defunct enhancement lends credence to a disparity rising to extraordinary and compelling. In Cleveland [supra], that court found the disparity warranted a reduction to time-served [id. at *8]. In United States v. Davis, [2021 U.S. Dist. LEXIS 213370 (S.D. Tex., Nov. 04, 2021)], that court found the same, and stated:

> [S]ubsequent modifications to the law which render an existing sentence significantly harsher than a newly imposed sentence would be for the same crime may constitute extraordinary and compelling circumstances.

[id. at *4].

As Jean's sentence represents a significant disparity over what would be called for today, this Court should find here an

extraordinary and compelling reason warranting a reduction to
time-served.

        4.    The length of time served

        As highlighted in the Statement of Facts section [supra],
Jean has been imprisoned for over 15 years, or 182 months flat.
[id., § 6; also Exhibit B at 03].  When figuring in all the good
conduct time he has earned, this rises to 209 months as of October
11, 2022. [id.].  When factoring this alongside his 292-month
sentence, Jean has served 71.58%, with another 5 1/2 years to go
until release. [Statement of Facts, § 6,7, supra].

        If Jean had been sentenced to today's low end of 160 months,
he would have served 130.63% of that sentence. [id., § 12].  At
today's high end of 185 months, he would have served 112.97%. [id.].
In both scenarios, Jean would already have discharged the sentence,
and reducing him to time-served would allow the court to maintain
respect for the law.  A sentence of time-served would account for
the entire range of Jean's sentencing range under today's Guidelines.

        5.    Individual circumstances, including rehabilitation

        Over the tenure of his imprisonment, Jean has engaged in ex-
tensive rehabilitative efforts in order to uphold the testimony at
sentencing where he averred he had "learned [his] lesson." [Sent.
Transcript at 15, ln. 7-10].  While "rehabilitation alone is not
an 'extraordinary and compelling' reason for a sentence reduction,
it can be a significant factor warranting a sentence reduction when
an inmate has an otherwise qualifying condition." [United States v.
Browning, 2022 U.S. Dist. LEXIS 48849, *6 (E.D. Tex., Mar. 18,
2022); also see 18 U.S.C. § 994(t) (holding "Rehabilitation of the

                                15

defendant alone shall not be considered an extraordinary and compel-
ling reason.")].   Jean submits the evidence of his rehabilitaton
supports the reasons he has yet presented.

First, Jean has worked.  Having spent over ten years at UNICOR,
Jean's dedication set him apart from the other prisoners.  His
Quality Assurance Manager, B. Sauls, provided a letter of support
that states:

> I have over 20 years of experience within the Federal Bureau
> of Prisons and very rarely have I come across an inmate that
> has truly worked on himself from the day of his admittance in
> the custody of the Bureau of Prisons, at bettering himself, for
> an eventual successful return into society.

[Appendix 4 at 01].

In addition, Jean's Fabric Work Supervisor from UNICOR  similarly
provides:

> Inmate Jean approaches his assignments with tenacity, dedi-
> cation and unequivocal focus which has a direct impact on
> FPI UNICOR Beaumont being one of the only factory's [sic]
> in the clothing and textile group to remain open during the
> COVID-19 pandemic.

[id. at 02].

These supervisors, who worked with and got to know Jean over many
years, both testify to his developed work ethic and maturity in
accepting responsibility. [id. at 01-02, generally].

Jean now works in Facilities (i.e., maintenance), and serves
as the inmate HVAC technician for Beaumont Low.  He left UNICOR
on good terms, yet wanted to further his experience and applicable
knowledge in HVAC systems.  His Education Transcipt reveals he is
currently involved in an apprenticeship for HVAC [Exhibit C], as
well as he has successfully completed 3,198 hours in HVAC related
education. [see Exhibit C, showing Air Conditioning/Refrig (1,918

16

hours) + Welding (480 hours) + Advanced Electric Theory (20 hours)
+ Electric Theory II (20 hours) + Basic Electrical Works (20 hours)
+ Basic Plumbing (20 hours) + Building Trades (720 hours)].**

Also in addition, Jean has completed another 456 hours of
educational programming, including a focus on learning Spanish in
order to heighten his marketability following release. [id.].
Altogether, Jean's work history, ethic, and education show he
has prepared for his eventual release back into society.

Second, Jean has displayed outstanding conduct over the past
15 years, the evidence revealing he is a model inmate.  While he
does have two incident reports, both are low-level, and are more
than eight years old.  The first is a code 310 for "being absent
from assignment" for which he was sanctioned to "loss of e-mail
for 15 days" [Exhibit E, § Report Number 2471716 (July 24, 2013)],
and the other was for the same, "being absent from assignment" for
which he was sanctioned to "loss of commissary for 15 days." [id.,
§ Report Number 2597276 (June 23, 2014)].

Yet, his "model inmate" conduct goes beyond avoiding trouble.
His son, with whom he has fostered a relationship despite the
separation and distance, writes that he "aspire[s] to emulate
[Jean's] endless work ethic," which perpetuates  "how crucial
knowledge and research are." He writes his father, Jean, "has
consistently been there to listen and offer heartfelt advice in
[his son's] time of need," conversations from which his son has

_____

** Jean's HVAC apprenticeship will amount to several thousand hours; however,
the amount thereof will not be reported on his transcript until completion.
[Exhibit C, § V-HVAC Apprenticeship].

"learned so many life lessons." [Appendix 1 at 03]. He describes
Jean as a "devout Christian[] who abides by the Lord's commandments,"
and offers that he would "think that over 16 years in prison would
negatively affect one's character and morals but thankfully that
is not the case with [Jean]." [id.].

Jean's brother submits his "brother is not the same person who
was sent to prison" and he, Jean, "consistently striv[es] to better
himself through education and personal development." [id. at 05].
His brother concludes by surmising Jean "has grown both personally
and spiritually." [id.]. Jean's mother similarly testifies to
having "witnessed [her] son's growth in prison over the past 15
years." [id. at 06].

Jean also maintains relationships with those outside his
family, like a friend who submits:

> Prison sometimes can have a negative outcome on people[]
> they lose hope, and they lose themselves. I believe this
> time Uncle Joel ["Jean"] has...found himself, a better
> version of himself. He has become a man of God who is a
> practicing Christian and is walking in a manner that is
> pleasing to God. He reaches out to me and held guide me
> through tough times in my life. He is always available to
> listen, we pray together and encourage each other.

[id. at 01].

Yet, not just in the circle of family and friends does Jean
receive such positive feedback. As cited earlier in this motion,
his supervisors from UNICOR gave glowing assessments. For example,
just as Jean's family testified of Jean's attention to their strug-
gles over the years, so says his boss:

> Inmate Jean is a true testament of an individual, whom [sic]
> has educated not only himself, but many of his peers, as he
> prepares for re-entry back into society.

[Appendix 4 at 01].

18

And his other boss:

> Witnessing inmate Jean tackle challenge after challenge
> until a successful result is achieved is one of the rare
> qualities I have seen inmate Jean demonstrate time and
> again in the face of adversity.  Perhaps it is this docu-
> mented trait alone that can provide substantial evidence
> that inmate Jean's exceptional capabilities are best
> served providing for himself, his family and serving his
> community, as opposed to expending government funds to
> "warehouse" inmate Jean.

[Appendix 4 at 02].

From these sources, it is clear Jean upholds the values indicative of a "model inmate."

Third, Jean has participated in drug education to comply with the Court's recommendation at sentencing. [see Doc. 54 at 02; see Appendix 2 at 03].  In light of this, the Bureau of Prisons' now holds Jean has no need of further drug treatment. [Exhibit F, § Drug Program Status: No Need].

Fourth, Jean has satisfied all financial obligations imposed upon him by the Court through successful participation in the BOP's Financial Responsibility Program ("FRP"). [see id., § FRP Refuse: FALSE].**

Fifth, Jean has steadily decreased his recidivism score under the BOP's Prisoner Assessment Tool Targeting Estimated Risk and Need ("PATTERN"), which reveals his score to be 43 for his General Score and 25 for his Violent Score. [Exhibit F].  This was conducted on May 13, 2022, and fails to include recent updates that would further lower his score.

For example, Jean recently disputed, and prevailed upon, the BOP's characterization of his "evading arrest" as an "escape."

---

** This item is backwards, as it considers whether Jean has refused to participate in the Financial Responsibility Program.  A value of "False" indicates he did participate successfully.

Jean includes his Male Custody Classification Form from October 11, 2022, showing the BOP assessed him custody points for this alleged "escape." [Appendix 6 at 05]. He also includes an updated version of the same form from November 07, 2022, showing the "escape" had been removed. [cf. Exhibit D].**

When comparing these Custody Classification Forms to his FSA Recidivism Risk Assessment [Exhibit F], it shows the BOP used this "escape" to assign Jean 3 points to his General Score and 2 points to his Violent Score. [id., § General Score, § Violent Score for § History of Escapes].

Jean's attempt to also update this FSA Recidivism Risk Assessment form was not immediately successful. Specifically, the BOP only updates this form periodically (i.e., every six months), and Jean was told by his Case Manager, Mr. Hebrich, on November 07, 2022, at approximately 2:15 PM, that it, the form, would be "automatically updated" during Jean's next bi-annual TEAM evaluation next year. As such, the record fails to account for the removal of the improperly scored so-called "escape."***

Jean current classification is a Medium. [see Appendix 6 at 02, showing PATTERN (General) score for Low is 6 to 39 points, while a Medium is 40 to 54 points; id. at 03, showing PATTERN (Violent) score for Low is 8 to 24 points, while for a Medium is 25 to 31 points]. Jean's score of 43 (General) and 25 (Violent) place him in the Medium range, but very slightly.

---

** Jean attaches the BP-8 (Documentation of Informal Resolution) he took to his case manager in resolving the improperly lodged escape from his Custody form. [Appendix 6 at 06].

*** Jean also attaches the BP-8 he took to his case manager in attempting to re- move the escape also from his FSA PATTERN score. [Appendix 6 at 07].

Further, the "escape" is improper to have included on his PATTERN scoring sheet [Exhibit F], and without it, Jean's score would become 40 (General) and 23 (Violent) - placing him at one point above the threshold for Low (General) and in the range of Low (Violent).

Lastly, Jean points out the BOP considers all convictions under 18 U.S.C. § 924(c) to be violent, thus further increasing his General Score by 5 points [id., § Violent Offense (PATTERN): True], and his Violent Score by 7 points. [id.]. Without this, his scores would both be comfortably in the Low range.

In any event, Jean has consistently reduced his risk of recidivism, and asks the Court to take that into account, along with the improperly lodged "escape," in deciding whether to reduce his sentence.

Ultimately, Jean has taken far-reaching strides to become a man who does not resort back to the ill-conceived behaviors that took him to prison. For the past 15 years, he has dedicated his time and attention to education, work, family, friends, and the Lord. His conduct has been outstanding, as have his accomplishments; and he asks the Court to view the other four extraordinary and compelling reasons through this lens. While this reason in and of itself is insufficient to support an extraordinary and compelling reason, Jean submits it flavors the other reasons accordingly.

In light of the foregoing, this Court should determine extraordinary and compelling reasons support a reduction to time-served.

21

## SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

The last step of the inquiry of whether to reduce a sentence, and the extent thereof, is to consider the sentencing factors codified in 18 U.S.C. § 3553(a) to the extent they are applicable. A review of these factors weighs in favor of a reduction to time-served. Below, Martin will address each pertaining factor.

1. **18 U.S.C. § 3553(a)(1) - The nature and circumstances of the offense and the history and characteristics of the defendant**

a. **Nature and circumstances of the offense**

Jean committed a serious offense that involved a dangerous drug (cocaine) and the presence of firearms. In his attempt to obtain a sentence reduction, he does not intend to justify, diminish, or detract from its seriousness. He accepted responsibility during his pretrial procedings, and even received a two-point offense level reduction for having done so. [see Doc. 90 at 16]. His basis for seeking a reduction in sentence, therefore, is founded in the changes to the law removing his Career Offender enhancement that requires today a far more lenient sentencing range than the one to which he was subjected.

b. **History and characteristics of the defendant**

Jean was 33 years old when the offenses were committed. [see Exhibit B at 01, § Date of Birth; cf. id., Date of Offense]. He is 49 today [id., § Age], and will be 54 on his statutory release date of June 12, 2028. [id., § The Inmate is Projected for Release]. He has served far more than half his sentence, reaching 71.58%, or 209 months, with good time factored in. (62.33%, or 182 months sans.)

22

Jean is non-violent, both prior to his imprisonment and during. The lone act of violence over his 49 years came during his 20's, and resulted in a minor scuffle in a fast-food restaurant parking lot. Such a minor incident was not even mentioned during Jean's sentencing hearing.

Jean is dedicated. Over the past 15 years, he has dedicated thousands of hours to furthering his understanding and competence in HVAC. Even his son writes:

> If released, there is no doubt in my mind that my dad would be able to work anywhere. That's how knowledgeable he is in regards to his field of study.

[Appendix 1 at 03].

Jean came into the BOP already possessing an Associate of Applied Science degree in HVACR, completing all hours of study with a 4.0 grade point average. [Appendix 2 at 01-02]. Then, whilst in the BOP, he has completed another 3,198 hours in HVAC and HVAC-related fields. He currently is earning an apprenticeship in the field. [Exhibit C].

Jean also has completed multiple vocational trades, like welding and construction (i.e., "Building Trades"), and has spent several years studying Spanish. [id.]. His accumulative education hours were at 3,654 as of October 11, 2022, and continue to grow.

Jean similarly is productive. Initially, he spent over 10 years working in UNICOR, earning valuable skills in manufacturing and advanced mathematics like statistical formulas and advanced equations, according to one of his supervisors. [Appendix 4 at 02]. He now serves in Facilities in order to obtain hands-on application of his HVAC skills and training, as well as to advance his appen-

23

ticeship.

Jean has maintained connections back home with family and
friends who are willing to support him upon release.  His friend
Amber pledges that:

> [Jean] has a huge support team and people who love and want
> the best for him.  I am one of those people.  I pledge to
> offer him all the support emotional, spiritual, financial,
> and spiritual that he needs upon his release.  I look for-
> ward to picking up and building our relationship that we
> have maintained from afar.

[Appendix 1 at 01].

His son similarly submits he will "support [his] dad however [he]
can when released." [id. at 04].  Jean's mother, Lina, avers that
"[Jean] is loved by everyone in the family," and that he will "have
all the love and support he needs." [id. at 07].  She pledges to
provide Jean a place to release to, and speculates on Jean using
his HVAC expertise to "open his own HVAC company and...take care
of his mom." [id.].  These letters make is clear that Jean has a
stable support system to release to, and to whom he will be held
accountable.

Numerous courts have considered a defendat's rehabilitation in
granting a reduction in sentence. [see United States v. Brown, 2020
U.S. Dist. LEXIS 87133, *12, 17-18 (S.D. Iowa, Apr. 29, 2020);
United States v. Decator, 2020 U.S. Dist. LEXIS 60109, *10 (D. Md.,
Apr. 06, 2020); United States v. Redd, 2020 U.S. Dist. LEXIS 45988,
*23 (E.D. Va., Mar. 16, 2020); United States v. Perez, 2020 U.S.
Dist. LEXIS 45635, *7 (D. Kan., Mar. 11, 2020) (finding that inmate's
rehabilitation favored compassionate release where inmate "gained
his GED while in prison and has availed himself to various educa-
tional programs.")].

24

The Supreme Court, too, has stated that a defendant's post-sentencing conduct is one of the best indicators of his post-imprisonment success. [Pepper v. United States, 562 U.S. 476, 491 (2011) (citing 18 U.S.C. § 3553(a)(1)); see Concepcion v. United States, 597 U.S. ___, generally].

In summary, Jean, over his 15-year term of imprisonment, has [a] earned over 3,000 hours of dedicated study towards HVAC; [b] applied that knowledge towards an apprenticeship; [c] earned vocational trades in welding and construction; [d] successfully completed another 22 educational programs; [e] completed a level of drug treatment necessary to be objectively deemed to need no further; [f] consistently reduced his recidivism score; [g] consistently behaved; [h] maintained and fostered relationships with family and friends; [i] satisfied all court-imposed financial obligations; [j] worked constantly; [k] worked currently; [l] shunned violence; [m] focused on his relationship with the LORD; [n] planned for a life ahead; [o] secured potential employment upon release;** and [p] served over 71% of a 292-month term of imprisonment. He has established a solid foundation both within himself and without from which to establish a reformed life following imprisonment. He asks the Court to provide him such an opportunity via a reduction to time-served. Attached to this motion is a personal statement through which Jean addresses the Court. [Appendix 1 at 09].

---

** Jean's support letter from his friend Amber, provides, "I work in real estate and have discussed with a contact of mine [Jean] and his situation and they are willing to give him a chance upon his release. He has promising opportunities waiting on him." [Appendix 1 at 01].

25

He asks the Court to consider it in determining whether to grant him relief.

This factor supports a reduction to time-served.

2. <u>18 U.S.C. § 3553(a)(2)(A) - The need to reflect the seriousness of the offense, promote respect for the law, and to provide for just punishment</u>

Respect for the law and just punishment may be considered as directly proportional to a sentence falling within the bounds pre-scribed by Congress.  For Jean, his original sentence came below that by 60 months.  Yet, developments in statutory interpretation now deem his underlying offenses to be unable to support the Career Offender enhancement that was responsible for producing such an ele-vating sentencing range.  Reducing his sentence to time-served allows his adjusted sentence still to fall within the statutory bounds, and Guidelines ranges, now called for - in fact, any sen-tence falling within today's Guideline range would fail to account for the amount of time Jean has already served.

When the court imposed Jean's original sentence, as stated, it varied downward by 60 months in light of an "excessive dispar-rity," determining that "some adjustment is justified." [Sentencing Transcript at 24, ln. 1-10].  Now that the Career Offender enhance-ment is inapplicable, a significant sentencing disparity now ex-ists between Jean and similarly situated defendants today.  Pro-moting respect for the law and providing just punishment takes into account these disparities; and in doing so, calls for a re-duction to time-served.

This factor supports a reduction.

26

3.   18 U.S.C. § 3553(a)(2)(B) - The need to afford adequate
     deterrence to criminal conduct

The process of aging often invokes a natural element of de-
terrence within an individual, as he sees life go by and understands
the moments he has missed will never again arise.  Fifteen years in
prison, since the age of 33, has forced Jean to watch go by a life
he could have lived, but chose not to.  By maintaining communica-
tions with his family, he's given a closer, more intimate view, as
described by his son:

> It has been really rough growing up without my father, his
> absence disturbs me deeply to this day.  I often think about
> how much better my life would have been had he been there
> to guide me like he wanted.  Despite him being gone, we have
> managed to foster an unbreakable bond that means the world to
> me and because of this it feels like he will never come home.

[Appendix 1 at 03].

Jean knows more than ever that the older he gets, the more he has
to leave behind; for that's life.  But prison has a way of magni-
fying it - especially when drawn out over 15 years.

If Jean is granted a reduction, his term of supervision is
eight years. [Exhibit B at 01, § Term of Supervision].  This con-
tinues a certainty of being caught, should be delve back into crimi-
nal habits. ["The certainty of being caught is a vastly more power-
ful deterrent than the [severity of the] punishment." United States
v. Browning, 2021 U.S. Dist. LEXIS 38058, *12-13 (E.D. Mich., Mar.
02, 2021)].

Yet, the sorrow compounded by having been away for so long,
and knowing more years remain until statutory release, serves as
ample deterrence.  Jean submits this point supports a reduction.

Moreover, prolonging his imprisonment subjects those last

years to the law of diminishing marginal returns, whereas the first years of imprisonment carry a much greater effect of deterrence than the last. As stated in the Deterrence in the 21st Century:

> [T]here is little evidence of a specific deterrent effect arising from the experience of imprisonment compared with the experience of noncustodial sanctions such a probation. Instead, the evidence suggests that reoffending is either unaffected or increased [by longer sentences].

> [id., by Daniel S. Nagin, 42 Crime & Just. 199, 201 (2013)].

4.    18 U.S.C. § 3553(a)(2)(C) - The need to protect the public from further crimes of the defendant

Jean has worked his way down from initial placement at a high-security USP compound (Big Sandy) to a low-security compound (FCI Beaumont Low), and has consistently reduced his PATTERN recidivism score. Nathan James, a Congressional Research Crime Policy Analyst, writes:

> The assessment of offender risk was originally a matter of professional judgment. [However] because courts and correctional officials make decisions every day about who can safely be diverted from incarceration or granted early release, they may benefit from...[a]ctuarial risk assessment tools. ... [Although] risk and needs assessment tools are not 100% accurate, ... the best models are usually able to predict recidivism with about 70% accuracy.

> [Risk and Needs Assessment in the Federal Prison System (2018), see https://sgp.fas.org/crs/misc/R44087.pdf (last accessed July 31, 2022)].

Jean submits his recidivism score, when considering the impending update removing the improperly-scored "escape" (see pages 19-21, supra), is on the edge of low and medium. Taking this into account, along with his placement at a low-security institution and minimal disciplinary record, evince that the public may be adequately protected through Jean's immediate release to community supervision.

This factor supports a reduction.

5.  18 U.S.C. § 3553(a)(2)(D) - The need to provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

a.  **Educational or vocational training**

As shown throughout this motion, Jean has completed thousands of hours of educational programming. He, too, has been offered a job upon release through his friend, Amber. ["...they are willing to give [Jean] a chance [i.e., a job] upon release. He has promising opportunities waiting on him." Appendix 1 at 01]. Further, his expertise, training, and experience in HVAC renders him employable in many venues. The education and vocation opportunities of which he availed himself will serve him well in securing employment upon release.

As stated in his request to the Warden:

> I would support myself [by] entering the field of HVAC. In light of my extensive education and experience over the past 15 years (including multiple certifications and achievements), I am employable at most businesses. I am currently researching available positions in the Houston area, and am pursuing the security of such a position contingent upon the success of this RIS endeavor.

[Exhibit A at 01].

Jean's best opportunities await him outside prison where he can put to use the knowledge and skills he has acquired therein. This factor supports a reduction.

b.  **Medical care**

Jean's motion for compassionate release is not founded in medical issues, as he maintains himself with ample care. The BOP has not been an environment where he has needed medical care on a

regular basis.   Nevertheless, he does address in his request to
the Warden how he will obtain medical care if release:

> In order to obtain medical care, I will initially apply for
> benefits under the Affordable Care Act ("ACA").  Upon success-
> ful employment, I will then transfer my care to a plan offered
> by my employer, or will instead obtain individual care avai-
> lable through the ACA.

> [Exhibit A at 01-02].

This factor supports a reduction.

6.   18 U.S.C. § 3553(a)(6) - The need to avoid unwarranted
     sentence disparities among defendants with similar
     records who have been found guilty of similar conduct

When fashioning a sentence, a court is directed to avoid un-
warranted disparities, which the Court did when originally senten-
cing him by varying downward by 60 months.   Reducing his sentence
today to time-served also accounts for such disparities; for Jean's
sentence no longer warrants a Career Offender enhancement.   The
difference between the floor of today's sentencing range (160
months) and Jean's sentence (292 months) equates to 11 years.   With
such a difference of over a decade more, this factor strongly sup-
ports a reduction to time-served.

## REENTRY PLAN

If granted release, Jean will initially reside with his mother.
["He will be released to his mother's home." Appendix 1 at 07].   He
has a job offer available via his friend, Amber. [Appendix 1 at 01].
Further, his experience and education in HVAC render him widely em-
ployable; for, nearly every structure in Houston uses air condi-
tioning and heating.   Jean has a network of support, including his
son [Appendix 1 at 03-04], his mother [id. at 06-07], his brother
[id. at 05], and his friend, Amber. [id. at 01-02].   Such support

30

includes accountability of Jean as he navigates his way back into society.

This factor supports a reduction.

## DANGER TO SOCIETY

Jean has consistently reduced his level of recidivism, as well as his custody level and security score. He poses no danger to society. Moreover, he will be near his family upon release, who have pledged to hold him accountable in order to help him transition.

He, too, will have eight years of supervised release, which courts have found mitigates any dangers associated with a sentence reduction. [United States v. Martin, 455 F. Supp. 3d 17 (W.D.N.Y. 2020); also United States v. Williams, 2020 U.S. Dist. LEXIS 63824, *9 (N.D. Fla., Apr. 01, 2020) ("[T]he risk of [the defendant] engaging in further criminal conduct is minimal and can be managed through...the terms of his supervised release.")].

Jean is not the same man who entered prison so long ago, as testified by the loved ones who submitted support letters. He, too, submits the same, as expressed in his letter to the Court. He has no interest to become involved in the criminal lifestyle that took so much from him; and asks the Court to allow him an opportunity to return to life.

## CONCLUSION

In light of the foregoing, this Court should reduce Jean's sentence to time-served.

31

Respectfully Submitted,

Joel Francois Jean, pro se
Reg. No. 98523-179
FCI Beaumont Low
P.O. Box 26020
Beaumont, TX 77720

## DECLARATION

I, JOEL F. JEAN, do hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed this 14th day of November, 2022.

Joel Francois Jean, pro se
Reg. No. 98523-179
FCI Beaumont Low
P.O. Box 26020
Beaumont, TX 77720



32

## CERTIFICATE OF SERVICE

I, JOEL F. JEAN, do hereby certify that on the 14th day of November, 2022, a true and correct copy of the foregoing was deposited into the outgoing legal mail for this institution with postage prepaid and affixed, and was addressed to the following:

UNITED STATES DISTRICT COURT
300 WILLOW STREET
BEAUMONT, TX 77701

In light of my pro se, prisoner litigant status, I respectfully request electronic service upon the attorney for the United States.

*Joel F. Jean*

Joel F. Jean, pro se
Reg. No. 98523-179
FCI Beaumont Low
P.O. Box 26020
Beaumont, TX 77720

TRULINCS 98523179 - JEAN, JOEL FRANCOIS - Unit: BML-V-A    | E·X·H·I·B·I·T    A |

---------------------------------------------------------------------------------------------

FROM: 98523179
TO: Warden LOW
SUBJECT: ***Request to Staff*** JEAN, JOEL, Reg# 98523179, BML-V-A
DATE: 10/11/2022 12:18:18 PM

To: Mr. Albert Thomas, III - Warden, FCI Beaumont Low
Inmate Work Assignment: Facilities

Dear Mr. Albert Thomas, III - Warden, FCI Beaumont Low:

    Greetings. This is to request for your recommendation to the Director of the Bureau of Prisons for her to file a motion in my sentencing court seeking a reduction-in-sentence ("RIS" or "Compassionate Release"). Specifically, I am seeking this relief in light of a non-retroactive change in law in my circuit whereby I would not be classified as a career offender. I make this request after serving 182 months (rising to 209 months with Good Conduct Time ["GCT"]) of a 292 month sentence.

    The reasons I am seeking an RIS are as follow:

[1] Since my sentencing, the Fifth Circuit has issued a non-retroactive change in law that substantially affects the enhancements to which I was subjected. Specifically, in light of the Hinkle/Tanksley decisions, I would no longer be deemed a career offender under the Guidelines. Consequently, my sentencing range would be lowered from 412-485 months to 152-175 months. Moreover, as I have already served 182 months of flat time (rising to 209 months with GCT), I have exceeded the updated sentencing range by 37.5% for the low end, and 19.43% for the high end.

Moreover, the Fifth Circuit has ruled that motions for an RIS pursuant to 18 U.S.C. Section 3582(c)(1)(A) empower the district court with discretion to determine whether non-retroactive changes in law, either standing alone or in conjunction with other reasons, constitute extraordinary and compelling circumstances warranting relief. I submit the reduced sentencing range as manifest via Hinkle/Tanksley creates such an extraordinary and compelling circumstance.

[2] In light of the new sentencing range, a sentence disparity is thereby manifest. Specifically, the different between a range of 412-485 months and 152-175 months creates a disparity wholly disproportionate to what a similarly situated defendant would be subjected today. A range that is approximately ten years below today's sentencing scheme creates an unwarranted sentencing disparity warranting relief via an RIS.

[3] I have engaged in extensive rehabilitative efforts during my term of imprisonment. Specifically, I have completed over 22 education programs that include vocational trades like welding, construction, heating/air-conditioning, and more. From UNICOR I have earned an ASQ certification, which requires a test from the freeworld, and empowers me to take my skills and education to any job outside prison. I also have completed drug education, electrical theory (basic and advanced) and Spanish, as well as I have worked in UNICOR for over ten years. These accomplishments provide the necessary framework in education and skills for me to transfer to any heating/air-conditioning ("HVAC") specialty job available.

[4] I have achieved a LOW level of recidivism under the First Step Act's ("FSA") PATTERN scoring system. This is an objective measure of my propensity to re-offend once release, and factors in dynamic information like my age, education, and outstanding disciplinary record. Moreover, my disciplinary record reflects only two incidents in over 15 years of imprisonment, both very low-level and related to failing to be present for a scheduled event. The latest of these incidents occurred in 2014, over 8 years ago.

Together, the above, whether individually or together, present four specific extraordinary and compelling reasons warranting an RIS to time-served.

    If granted release, I would reside with my mother, Lina Jean, who lives at the following address: 608 Meadowick Drive, Baytown, Texas, 77521.

    I would support myself myself entering the field of HVAC. In light of my extensive education and experience over the past 15 years (including multiple certifications and achievements), I am employable at most businesses. I am currently researching available positions in the Houston area, and am pursuing the security of such a position contingent upon the success of this RIS endeavor.

                                                                        EXH A · 01

    In order to obtain medical care, I will initially apply for benefits under the Affordable Care Act ("ACA"). Upon successful employment, I will then transfer my care to a plan offered by my employer, or will instead obtain individual care available

TRULINCS  98523179 - JEAN, JOEL FRANCOIS - Unit: BML-V-A

--------------------------------------------------------------------------------------------------------------

through the ACA.

   Thank you for taking the time to consider this request for a reduction in sentence.

EXECUTED, SUBSCRIBED, AND SWORN TO UNDER PENALTY OF PERJURY PURSUANT TO 28 U.S.C. SECTION 1746
THIS 10TH DAY OF OCTOBER, 2022.

Respectfully Submitted,

/s/

Joel F. Jean, pro se
Reg. No. 98523-179
FCI Beaumont Low
P.O. Box 26020
Beaumont, TX 77720

CC: United States District Court
     Eastern District of Texas (Beaumont Division)
     File

EXH  A  ·  02

```
  BMLCQ  540*23 *              SENTENCE MONITORING        *      10-11-2022
PAGE 001           *           COMPUTATION DATA           *      14:40:00
                               AS OF 10-11-2022
```

REGNO..: 98523-179 NAME: JEAN, JOEL FRANCOIS    E·X·H·I·B·I·T   B

```
FBI NO...........: 190448PA4        DATE OF BIRTH: 09-29-1973  AGE:  49
ARS1.............: BML/A-DES
UNIT.............: 2 GP              QUARTERS.....: V02-030L
DETAINERS........: NO               NOTIFICATIONS: NO
```

FSA ELIGIBILITY STATUS IS: INELIGIBLE

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.

HOME DETENTION ELIGIBILITY DATE....: 12-12-2027

THE INMATE IS PROJECTED FOR RELEASE: 06-12-2028 VIA GCT REL


---------------------CURRENT JUDGMENT/WARRANT NO: 010 -----------------------

```
COURT OF JURISDICTION...........: TEXAS, EASTERN DISTRICT
DOCKET NUMBER...................: 1:08CR00101-001
JUDGE...........................: CLARK
DATE SENTENCED/PROBATION IMPOSED: 09-22-2009
DATE COMMITTED..................: 11-10-2009
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO
```

```
                 FELONY ASSESS  MISDMNR ASSESS  FINES      COSTS
NON-COMMITTED.: $200.00         $00.00          $00.00     $00.00
```

RESTITUTION...:  PROPERTY: NO  SERVICES: NO      AMOUNT: $00.00

------------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....: 391    21:846 SEC 841-851 ATTEMPT
OFF/CHG: 21:846 CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE 500
        GRAMS OR MORE BUT LESS THAN 5 KILOGRAMS OF COCAINE

```
  SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
  SENTENCE IMPOSED/TIME TO SERVE.:  232 MONTHS
  TERM OF SUPERVISION............:    8 YEARS
  DATE OF OFFENSE................: 08-07-2007
```

G0002      MORE PAGES TO FOLLOW . . .

EXH B · 01

```
   BMLCQ  540*23 *          SENTENCE MONITORING          *     10-11-2022
PAGE 002         *          COMPUTATION DATA             *     14:40:00
                            AS OF 10-11-2022
```

REGNO..: 98523-179 NAME: JEAN, JOEL FRANCOIS


------------------------CURRENT OBLIGATION NO: 020 --------------------------
OFFENSE CODE....: 130    18:924(C) FIREARMS LAWS        FSA INELIGIBLE
OFF/CHG: 18:924(C)(1) POSSESSION OF A FIREARM IN FUTHERANCE OF A DRUG
        TRAFFICKING CRIME

  SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
  SENTENCE IMPOSED/TIME TO SERVE.:   60 MONTHS
  TERM OF SUPERVISION............:    3 YEARS
  DATE OF OFFENSE................: 08-07-2007

------------------------CURRENT COMPUTATION NO: 010 --------------------------

COMPUTATION 010 WAS LAST UPDATED ON 04-07-2020 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 11-25-2009 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010, 010 020

DATE COMPUTATION BEGAN..........: 09-22-2009
AGGREGATED SENTENCE PROCEDURE...: AGGREGATE GROUP 800 PLRA
TOTAL TERM IN EFFECT............:  292 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:   24 YEARS      4 MONTHS
AGGREGATED TERM OF SUPERVISION..:    8 YEARS
EARLIEST DATE OF OFFENSE........: 08-07-2007

JAIL CREDIT.....................:  FROM DATE    THRU DATE
                                   09-18-2007   09-21-2009
```


```
G0002      MORE PAGES TO FOLLOW . . .
```

EXH B · 02

```
  BMLCQ  540*23 *              SENTENCE MONITORING           *      10-11-2022
PAGE 003 OF 003 *             COMPUTATION DATA               *      14:40:00
                              AS OF 10-11-2022
```

REGNO..: 98523-179 NAME: JEAN, JOEL FRANCOIS


```
TOTAL PRIOR CREDIT TIME.........: 735
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 1314
TOTAL GCT EARNED................: 810
STATUTORY RELEASE DATE PROJECTED: 06-12-2028
ELDERLY OFFENDER TWO THIRDS DATE: 12-08-2023
EXPIRATION FULL TERM DATE.......: 01-17-2032
TIME SERVED.....................:   15 YEARS     24 DAYS
PERCENTAGE OF FULL TERM SERVED..: 61.9
PERCENT OF STATUTORY TERM SERVED: 72.6

PROJECTED SATISFACTION DATE.....: 06-12-2028
PROJECTED SATISFACTION METHOD...: GCT REL

REMARKS.......: 04072020,UPDTD GCT PURSUANT TO FSA.B/KRW
```


G0000      TRANSACTION SUCCESSFULLY COMPLETED


EXH B · 03

```
  BMLCQ          *          INMATE EDUCATION DATA          *      10-11-2022
PAGE 001 OF 001 *              TRANSCRIPT                  *      14:40:55

REGISTER NO: 98523-179    NAME..: JEAN              FUNC: PRT
FORMAT.....: TRANSCRIPT    RSP OF: BML-BEAUMONT LOW FCI
```

E·X·H·I·B·I·T   C

```
--------------------------- EDUCATION INFORMATION ---------------------------
FACL ASSIGNMENT DESCRIPTION           START DATE/TIME STOP DATE/TIME
BML  ESL HAS   ENGLISH PROFICIENT     12-28-2009 1213 CURRENT
BML  GED HAS   COMPLETED GED OR HS DIPLOMA  12-28-2009 1213 CURRENT


--------------------------- EDUCATION COURSES ---------------------------
SUB-FACL   DESCRIPTION               START DATE  STOP DATE EVNT AC LV   HRS
BML        V-HVAC APPRENTICESHIP      06-10-2022 CURRENT
BML        PRODUCT DEVELOPMENT ACE LOW 06-08-2022 08-10-2022  P  C  P    20
BML        EMPLOYMENT OPPORT.         06-08-2022 06-08-2022  P  C  P     2
BML        MEN'S HEALTH, RPP#1        09-15-2020 10-18-2020  P  C  P    10
BML        UNICOR ASQ QUALITY 101 TRAIN 02-08-2019 05-24-2019  P  C  P    15
BML        MONEY SMART, RPP#3         04-10-2018 06-14-2018  P  C  P    40
BML        EMPLOY OPPORTUNITY, RPP#2  01-08-2018 03-14-2018  P  C  P    32
TRV        AIR CONDITIONING/REFRIG (EM) 06-06-2015 06-09-2016  P  P  A  1918
TRV        WELDING 12:30PM-RECALL     09-08-2015 05-20-2016  P  C  C   480
TRV        ADVANCED ELECTRIC THEORY   09-23-2015 11-26-2015  P  C  P    20
TRV        INTER  KEYBRDING 2(EM)     06-29-2015 12-19-2015  P  C  P    32
TRV        ELECTRIC THEORY II         06-29-2015 08-31-2015  P  C  P    20
TRV        BEGINING KEYBRDING 1(EM)   04-18-2015 06-29-2015  P  C  P    32
TRV        BASIC ELECTRICAL WORKS     04-14-2015 06-16-2015  P  C  P    20
TRV        BASIC PLUMBING             10-16-2014 12-31-2014  P  C  P    20
TRV        BUILDING TRADES 12:30-RECALL 10-23-2013 10-24-2014  P  C  M   720
TRV        MATH FOR TRADES            07-24-2014 10-10-2014  P  C  P    20
TRV        REAL ESTATE                10-17-2013 12-23-2013  P  C  P    20
TRV        INTRO TO SPANISH BASIC (PG) 07-24-2013 09-30-2013  P  C  P    20
BSY        (L) SPANISH 1-CAI          11-29-2011 05-17-2012  P  C  P    75
BSY        COOMPUTER AIDED INSTR. ORIENT. 02-29-2012 04-03-2012  P  C  P     1
BSY        (A)KEYBOARDING-CAI         09-20-2011 11-27-2011  P  C  P    25
BSY        STRATEGIC THINKING         10-12-2010 01-18-2011  P  C  P    24
BSY        BEG CROCHET,T&R,12:30-2:00;JB 09-19-2010 11-05-2010  P  C  P    12
BSY        KEYBOARDING, SELF STUDY    07-01-2010 11-04-2010  P  C  P    75
BSY        ELL ORIENTATION            04-28-2010 04-28-2010  P  C  P     1




G0000      TRANSACTION SUCCESSFULLY COMPLETED
```

```
 BMLCQ  606.00  *     MALE CUSTODY CLASSIFICATION FORM      *      11-07-2022
PAGE 001 OF 001                                                    13:48:18
                         ┌─────────────────┐
                         │ E·X·H·I·B·I·T  D │
                         └─────────────────┘
                          (A) IDENTIFYING DATA

REG NO..: ┌─────────┐         FORM DATE: 11-07-2022         ORG: BML
          │98523-179│
          └─────────┘
NAME....: JEAN, JOEL FRANCOIS

                                    MGTV: NONE

PUB SFTY: NONE                      MVED:
                          (B) BASE SCORING
DETAINER: (0) NONE                SEVERITY.......: (3) MODERATE
MOS REL.: 67                      CRIM HIST SCORE: (10) 13 POINTS
ESCAPES.: (0) NONE                VIOLENCE.......: (1) > 10 YRS MINOR
VOL SURR: (0) N/A                 AGE CATEGORY...: (2) 36 THROUGH 54
EDUC LEV: (0) VERFD HS DEGREE/GED  DRUG/ALC ABUSE.: (0) NEVER/>5 YEARS
                          (C) CUSTODY SCORING
TIME SERVED.....: (4) 26-75%      PROG PARTICIPAT: (2) GOOD
LIVING SKILLS...: (2) GOOD        TYPE DISCIP RPT: (5) NONE
FREQ DISCIP RPT.: (3) NONE        FAMILY/COMMUN..: (4) GOOD


                   --- LEVEL AND CUSTODY SUMMARY ---
 BASE CUST VARIANCE  SEC TOTAL  SCORED LEV MGMT SEC LEVEL  CUSTODY  CONSIDER
 +16  +20    -2        +14       LOW         N/A             IN     DECREASE



 G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

EXH D · 01

```
   BMLCQ          *          INMATE DISCIPLINE DATA          *      10-11-2022
PAGE 001 OF 001  *   CHRONOLOGICAL DISCIPLINARY RECORD       *      14:41:46

REGISTER NO: 98523-179 NAME..: JEAN, JOEL FRANCOIS    E·X·H·I·B·I·T  E
FUNCTION...: PRT       FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 10-11-2022


-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2597276 - SANCTIONED INCIDENT DATE/TIME: 06-23-2014 1245
UDC HEARING DATE/TIME: 06-27-2014 1525
FACL/UDC/CHAIRPERSON.: TRV/LIVE OAK/C. SMITH
REPORT REMARKS.......: INMATE WAS INFORMED OF HIS RIGHTS.
                       INMATE STATED THE REPORT IS TRUE.
  310  BEING ABSENT FROM ASSIGNMENT - FREQ: 1
       LP COMM    / 15 DAYS / CS
       COMP:   LAW:   15 DAYS LOSS OF COMM. TO BEGIN ON 06-27-2014.
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2471716 - SANCTIONED INCIDENT DATE/TIME: 07-24-2013 0830
UDC HEARING DATE/TIME: 07-30-2013 1322
FACL/UDC/CHAIRPERSON.: TRV/LIVE OAK/C. SMITH
REPORT REMARKS.......: INMATE WAS INFORMED OF HIS RIGHTS.
  310  BEING ABSENT FROM ASSIGNMENT - FREQ: 1
       LP EMAIL   / 15 DAYS / CS
       COMP:   LAW:   LOSS OF EMAIL FOR 15 DAYS TO BEGIN ON 07-30-2013.
```

```
G0005        TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

EXH E · 01

FSA Recidivism Risk Assessment (PATTERN 01.03.00)

Register Number:98523-179, Last Name:JEAN

| U.S. DEPARTMENT OF JUSTICE | E·X·H·I·B·I·T  F | FEDERAL BUREAU OF PRISONS |
|---|---|---|

| | |
|---|---|
| Register Number: 98523-179 | Risk Level Inmate....: R-MED |
| Inmate Name | General Level......: R-MED (43) |
| Last.........: JEAN | Violent Level......: R-MED (25) |
| First........: JOEL | Security Level Inmate: LOW |
| Middle.......: FRANCOIS | Security Level Facl..: LOW |
| Suffix.......: | Responsible Facility..: BML |
| Gender.........: MALE | Start Incarceration..: 09/22/2009 |

**PATTERN Worksheet Summary**

| Item | - Value | - General Score | - Violent Score |
|---|---|---|---|
| Current Age | 48 | 14 | 8 |
| Walsh w/Conviction | FALSE | 0 | 0 |
| Violent Offense (PATTERN) | TRUE | 5 | 7 |
| Criminal History Points | 13 | 40 | 15 |
| History of Escapes | 1 | 3 | 2 |
| History of Violence | 1 | 1 | 2 |
| Education Score | HighSchoolDegreeOrGED | -2 | -2 |
| Drug Program Status | NoNeed | -6 | -3 |
| All Incident Reports (120 Months) | 2 | 2 | 2 |
| Serious Incident Reports (120 Months) | 0 | 0 | 0 |
| Time Since Last Incident Report | 94 | 0 | 0 |
| Time Since Last Serious Incident Report | N/A | 0 | 0 |
| FRP Refuse | FALSE | 0 | 0 |
| Programs Completed | 17 | -12 | -4 |
| Work Programs | 3 | -2 | -2 |
| | Total | 43 | 25 |

EXH F · 01

District Court
Eastern District of Texas
300 Willow Street
Beaumont, TX 77720

A·P·P·E·N·D·I·X    1

Amber Thibodeaux-Paris
15507 Broken Cypress Circle
Houston, TX 77049
October 24, 2022

Dear District Court:

This letter is in support of Joel F. Jean, who is seeking a reduction in sentence to time-served. I wish to take a moment to address Joel's rehabilitation, as I've seen it, over the course of his imprisonment.

Joel is a really good friend of mine turned family. I call him "Uncle Joel." He has always been a positive part of my life especially as a young adult. He was always a supportive and encouraging friend. He has now been gone over 16 years to his family and friends it feels like a lifetime losing such an important part of our lives. Despite the distance we have remained in close contact.

I have seen so many changes in Uncle Joel since he has been gone. Talking to him he we discuss his future often and the man he wants to be for his family. Everyday he strives to better himself through prayer, education, and different self-development activities. Uncle Joel is a very smart man and channeling everything that he has learned over the years in the right direction I fully believe he can be successfully and outstanding addition to society. Uncle Joel has taken different trades and has taken an interest in heating and air condition (HVAC). I know he has taken part in an apprenticeship and has many hours of hands-on experience. I am sure upon being released he will have no problems with securing full-time employment with his knowledge. I work in real estate and have discussed with a contact of mine my Uncle and his situation and they are willing to give him a chance upon his release. He has promising opportunities waiting on him.

Furthermore, not only has Uncle Joel grown personally but spiritually, he is no longer the same person he was who entered prison. Prison sometimes can have a negative outcome on people they lose hope, and they lose themselves. I believe this time Uncle Joel has had he has found himself, a better version of himself. He has become a man of God who is a practicing Christian and is walking in a manner that is pleasing to God. He reaches out to me and helps guide me through tough times in my life. He is always available to listen, we pray together and encourage each other.

I know that returning home after all these years can be difficult for some, but Uncle Joel has a huge support team and people who love and want the best for him. I am one of those people. I pledge to offer him all the support emotional, spiritual, financial, and spiritual that he needs upon his release. I look forward to picking up and building our relationship that we have maintained from afar. My

District Court
October 24, 2022
Page 2

children look forward to getting to know their Uncle Joel and having him be an active part of their lives. He is a wonderful man and deserves a second chance in life.

Uncle Joel has shown remarkable growth; and I urge the court to grant him this opportunity for immediate release. Thank you for your time and considering this letter of support.

Sincerely,

Amber Thibodeaux-Paris

October 25<sup>th</sup>, 2022
Joseph Jean
984 Hamilton Drive
Waco, TX 76705

United States District Court
Eastern District of Texas
300 Willow Street
Beaumont, TX 77720

**RE: LETTER IN SUPPORT OF JOEL F. JEAN – CASE NO. 1:08-cr-101(1)**

Dear District Court:

The purpose of this letter is to help out my father, Joel Francois Jean, in regards to his attempt at a reduction in his sentence. I would like to speak on his behalf in order to illustrate how he has grown over the course of his imprisonment.

It has been really rough growing up with out my father, his absence disturbs me deeply to this day. I often think about how much better my life would have been had he been there to guide me like he wanted. Despite him being gone, we have managed to foster an unbreakable bond that means the world to me and because of this it feels like he will never come home.

My dad has grown exponentially to say the least, in both his knowledge and as a person. His drive for self-improvement inspired me to strive for more in my own life and I know for a fact that I would not be where I am today had he not made the efforts to communicate with me. I now know how to manage my credit because of him. His words and example have shown me how crucial knowledge and research are. He has come so far from the man he used to be and has taught me the importance of cultivating a skill or trade so that I may offer a service to society. Through his countless hours of hands on training and studies of heating and air conditioning (HVAC) he has demonstrated to me how to help one's community instead of hurting it. If released, there is no doubt in my mind that my dad would be able to work anywhere. That's how knowledgeable he is in regards to his field of study. I aspire to emulate his endless work ethic and am proud to call him my dad. He is one the smartest people I have ever known, which makes the pain of his absence even greater.

He has also grown both emotionally and spiritually, on top of his education he has also proven to be a very wise man. My dad has consistently been there to listen and offer heart felt advice in my times of need, helping me to make better decisions in regards to my well-being. I would think that over 16 years in prison would negatively affect one's character and morals but thankfully that is not the case with my dad.  He is a devout Christian, who abides by the Lord's commandments, always striving to act in way pleasing to God. Our conversations mean so much to me and I have learned so many life lessons from him. My dad will always have a special place in my heart, we share a bond that a lot of family members struggle to cultivate even outside of prison.

October 25th, 2022
Joseph Jean
984 Hamilton Drive
Waco, TX 76705

I pledge to support my dad however I can when released and anxiously await the day that we can spend more time together. There are no words to describe how great it would be having him home as I have and continue to miss him every day. My father is a reformed man who deserves a second chance at life, this I know in my heart to be true. He only wants a chance to do things the right way and to be there for his family in our time of need as we will be there for him.

In short, my dad has grown tremendously, and I implore the court to grant him this opportunity for immediate release. Thank you for considering this letter of support.

Sincerely,

*Joseph Jean*

APP 1 • 04

Pierre Fleming
608 Meadowick Dr.
BAYtown, TX 77521

RE: letter in Support of Joel F. Jean.
Case no. 1:08-cr-101(1)

Dear: District Courts;

This letter is in Support of Joel F. Jean, who is Seeking a reduction in Sentence To Time-Served. I wish To tAke a moment To address Joel rehabilitation as Seen it over The course of his imprisoment.

Joel is my brother, and I just hate the fact of how long he's been away from our Family and from me. He's now been gone over 15 years and sometimes it seems like he'll never come home. First my brother is not the SAme person who was sent To prison all Those years ago. He consistently striving to better himself through education and personal development. He has over the years taken up different trades, and has dedicated So much effort to studying Heating and air conditioning ("HVAC"). He has undertaken an apprenticeship in the field and has spent Thousands of hours with The hands on approach. He has grown both personally and spiritually. He's no longer The SAme person who Entered prison.

Sincerely yours:

Pierre Fleming

APP 1 · 05

To: United States District Court
Eastern District of Texas
300 Willow Street
Beaumont, Tx 77720

November 2, 2022

From: Lina Jean
408 Meadowick Dr.
Baytown, Tx 77521

I am writing this letter on behalf of my son Joel Jean In support of his effort for compassionate release. I have witnessed my son's growth in prison over the last 15 years. He is a man who has used his time wisely to not only to better himself, but to also become a better man.

Joel is my baby boy. The youngest out of seven boys. I miss him dearly. It pains me so much because it feels like he is never coming home. He has been gone for over 15 years. I will be 80 years old in January. I pray everyday to God to please let my son come home before it is to late. My son is a good man. He has made mistakes but he has done everything he can while in there to prepare himself to be a good productive part of society when he is released. He has stayed out of trouble which I always tell him too. He has elevated himself with all the educational and vocational programs he has taken while in there. He sends me all his certificates. I am pleading and begging whoever is reading this, to please give my son a chance.

APP 1 · 06

To have my son home would heal my soul. You have no idea how much I worry on a daily basis about my son. Please try your best to understand how this truly affects

a mother, I have been feeling this way for 15 years. Believe me when I say that my Joel is loved by everyone in the family. He will have all the love and support he needs. He will be released to his mother's home. I already have Joel's bedroom set up and waiting for him because I know God is going to answer my prayers. He always tells me about his plans to open his own H.V.A.C company and how he plans to take care of his Mom.

Once again, I am pleading and begging you to please give my son this chance. He won't let me, his sons, grandkids or you down. Please give my son back to me.

Sincerely,
Lina Jean

November 07, 2022

Joel F. Jean
Reg. No. 98523-179
FCI Beaumont Low
P.O. Box 26020
Beaumont, TX 77720

United States District Court
E.D. Tex. - Beaumont Div.

RE: PERSONAL TESTIMONY IN SUPPORT OF A REDUCTION-IN-SENTENCE

Case No. 1:08-cr-101-1

Dear District Court:

After more than 15 years and several changes in the law do I submit this motion for a sentence reduction. I have included many documents evincing the lengths I have gone to in achieving a significant change within, as well as those changes without. Also attached are letters of support from the family who has stood by my side this entire time. Without them, I could not have made such strides. After much thought and prayer, I have come to believe I am ready to be released; and present this motion to you under such conviction. Thank you for hearing me.

When I was sentenced to prison, again, I knew it was for real. Facing nearly a 25-year sentence with no hope for parole or early release forced me to begin a long inward journey towards what I hoped may one day be redemption. My life in prison over these past 15 years has been difficult and painful, as have the moments I missed out on with my family - especially my son. I'll never get those back, and that's some deep regret I must endure. Such is the reality wrought from longterm incarceration; such is the consequence of my wrongdoing.

The difficulty with hope never did end in hopelessness, however; and I passed the years not wallowing, but studying. I figured I could use this time to become exceptionally gifted in one area: HVAC. And I have. With now over 20 years of experience, I will have little resistance in securing employment. One day I will open my own company specializing in it; and will spend these first years out saving to do so. I will also spend those years becoming reaquainted with my family, especially my son, and looking after my mother.

It's worth mentioning how my view of life has changed since you sentenced me. Simply, I discovered how much I longed to love. Prison is a stark, hard, and cold environment where love often seems so far away. It often feels empty, and can drive a man to believe as much about himself. The LORD works miracles here, and I've become convicted of having failed Him, and my family, and myself. Yet, he offers second chances; and I thank Him for those... because I'd be otherwise lost.

APP 1 · 09

I've come to see this experience as the place I needed to be to learn the lessons about love I disregarded growing up.  I now have those; and do hope the Court affords me the opportunity to exercise them now, rather than later.

Simply put, everything I have been through has shaped me into the man who writes you today.  I am grateful for this experience, and do thank the Court for having been the impetus of its imposition. I would rather go through the rest of my life being the man I now am, instead of the man I used to be.

Thank you for allowing me this opportunity.

Respectfully Submitted,

Joel Francois Jean

APP 1 · 10

November 10, 2022

Jacob A. Powell
Reg. No. 46655-177
FCI Beaumont Low
P.O. Box 26020
Beaumont, TX 77720

United States District Court
300 Willow Street
Beaumont, TX 77701

RE: **LETTER IN SUPPORT OF JOEL F. JEAN • CASE NO. 1:08-cr-0101-01**

Dear District Court in Beaumont, Texas:

Greetings.  This letter is written in support of Mr. Joel F.
Jean, a fellow prisoner whom I have befriended during our tenure
at FCI Beaumont Low.  As someone who sees and interacts with Jean
on a regular basis, I'd like to share my impressions with the
Court as a decision is made whether to grant compassionate release
or some other reduction.  I pray the Court does so.

First, Jean carries himself in a manner worthy of an environ-
ment more civilized than a prison.  He is courteous, well-mannered,
polite, and sophisticated - traits not often seen here.  When I
first met him, I found it hard to believe he had been imprisoned
for so long, and that he had began at a USP.  He reminds me more
of the faculty from the college I had attended; certainly not of
someone in the midst of a prolonged stretch of American justice.

Second, Jean is interesting, expressing himself and his ideas
with articulated precision and remarkable attention to detail.  He
tends to his studies with focus, and remains dedicated no matter
the obstacle, which prison is full of.  He cares deeply for lear-
ning, as well as for teaching and leading others, especially the
younger guys.  Around here, he's a role-model who gives his time,
his attention, his knowledge, and even his resources in helping
the guys make better decisions.  They'd follow him anywhere.

Third, Jean walks in a manner pleasing to the Lord; for he
keeps His Commandments.  Prison is full of temptations, and many
men fall prey to such enticements.  Jean's life revolves around the
Lord, and he helps others - including me - strive likewise.  It
will be sad to see him go, but this is no place for him.  Not anymore.

Jean's a strong man who struggled through much to get that
way.  He just doesn't give up, refuses to quit, and I think that's
served him well despite the harshness of this place.  I do hope you
give him a shot.  I've seen many guys go, and many guys return,
but Jean won't be back.  Thank you for allowing me to share what
I think.

Sincerely,

Jacob A. Powell

APP 1 • 08

```
                    CENTRAL TEXAS COLLEGE - FICE 004003
                              PO BOX 1800
                          KILLEEN, TX 76540-1800                    PAGE  1
                         Permanent Academic Record
                            Date: 10/13/2014

Mr Joel F. Jean
Rt 2 Box 4400
Gatesville TX 76597          ┌─────────────────────────┐
                             │ A·P·P·E·N·D·I·X   2 │
                             └─────────────────────────┘


                         Student Name: Mr Joel F. Jean
                         DOB: September 29
                         ID:
-------------------------------------------------------------------------------
                         INSTITUTIONAL CREDITS
                                       HRS    HRS    HRS    GRADE
                              GRADE    ATT    EARN   TO/GPA POINTS   GPA
Spring 1996
** Dean's List **
    AIRC  1400 Basic Ac/Refrig Thry      A    4.0    4.0    4.0    16.0
    AIRC  1401 Elec for Ac/Refrig I      A    4.0    4.0    4.0    16.0
    AIRC  1403 Heating Systems           A    4.0    4.0    4.0    16.0
    AIRC  1406 Elect Ac/Refrig II        A    4.0    4.0    4.0    16.0
Term Total:                                  16.0   16.0   16.0    64.0   4.000
Cum Total:                                   16.0   16.0   16.0    64.0   4.000


              Certificate of Completion I in Air Conditioning
                         Conferred May 18, 1996
                         Graduation GPA = 4.000
Summer 1996
** Dean's List **
    AIRC  1407 Mech Refrig Systems       A    4.0    4.0    4.0    16.0
    AIRC  2400 Elect Ac/Refrig III       A    4.0    4.0    4.0    16.0
    AIRC  2404 Trblshot Ac/Refg Sys      A    4.0    4.0    4.0    16.0
    AIRC  2405 Heat Pumps I              A    4.0    4.0    4.0    16.0
Term Total:                                  16.0   16.0   16.0    64.0   4.000
Cum Total:                                   32.0   32.0   32.0   128.0   4.000


-------------------------------------------------------------------------------
                         SUMMARY OF CREDITS

    Transfer Credits:        0.0
    Evaluated Credits:       0.0
    Institutional Credits:  32.0
    Cumulative Credits:     32.0
    Credits toward GPA:     32.0

    TEC 51.907 Undergraduate Course Drop Counter: N   This process is under development and the counter is inactive
-------------------------------------------------------------------------------
                    TEXAS SUCCESS INITIATIVE CLASSIFICATION

    AREA        STATUS     EXPLANATION
    All         Waived     Institutional Waiver

-------------------------------------------------------------------------------

   *** CONTINUED ***
```

APP 2 · 01

APP 2 • 02

*Susan Moore-Fontenot*

Chairperson, Board of Regents

# Lee College

Upon the recommendation of the faculty
the Trustees of Lee College have conferred upon

## Joel Francois Jean

the degree of

## Associate of Applied Science

Air Conditioning, Heat & Refrigeration

with all rights, privileges, and honors thereto
pertaining here and elsewhere.
Given at Baytown, Texas this fourth day
of May, two thousand and one.

*Denis Brown*

President of the College

HONOR GRADUATE

APP 2 • 03

# Certificate of Completion

This certifies that

## *Joel Jean* (98528-179)

has successfully completed the

## Drug Education Course

at USP Big Sandy

This 3rd day of June, 2010

M. Salyer
Drug Treatment Specialist



Adult Continuing Education Program

*Certificate of*

ACHIEVEMENT

THIS CERTIFIES THAT

JOEL JEAN

HAS COMPLETED THE REQUIREMENTS FOR THE CLASS

KEYBOARDING,

AND IS THEREFORE ISSUED THIS CERTIFICATE.
PRESENTED BY THE EDUCATION DEPARTMENT, USP BIG SANDY

November 4, 2010

P. Patterson, Acting SOE

K. Callahan, VT Instructor

APP 2 · 04



# Adult Continuing Education Program

### Certificate of Achievement

This certifies that Joel Jean has completed the requirements for the class Strategic Thinking and is therefore issued this certificate. Presented by the Education Department, USP Big Sandy.

January 18, 2011

G. Bratcher, Supervisor of Education

S. Napier, ACE Coordinator

APP 2 · 05

# Adult Continuing Education Program

## Certificate of

# ACHIEVEMENT

### THIS CERTIFIES THAT

## JOEL JEAN

HAS COMPLETED THE REQUIREMENTS FOR THE

**CAREER BUILDER TYPING COURSE,**

AND IS THEREFORE ISSUED THIS CERTIFICATE.
PRESENTED BY THE EDUCATION DEPARTMENT, USP BIG SANDY

November 27, 2011

G. Bratcher, SOE

K. Callahan, VT Instructor

APP 2 . 06

# Adult Continuing Education
## Certificate of Completion

awarded to:

### Joel Jean
89523-179

Successfully completed

## Spanish I

V. Zamzow/ACE Coordinator

APP 2 · 07

Sept 25, 2013

Date



# Adult Continuing Education

## Certificate of Completion

awarded to:

### Joel Jean

98523-179

## Real Estate

APP 2 · 08

V. Zamzow/ ACE Coordinator

December 21, 2014

Date

# Coastal Bend College

Beeville        Alice        Kingsville        Pleasanton

## Certificate of Achievement

This certificate is awarded to

### JOEL FRANCOIS JEAN

as evidence of satisfactorily completing the requirements for

Construction & Maintenance Trades - Carpentry Option

72.0 CEU Credits (720 Contact Hrs.)

Awarded on the 20th day of October 2014

APP 2 · 09

_Katie Sherman_
Katie Sherman
Customized and Continuing Education
Director

_Dr. Beatriz Espinoza_
Dr. Beatriz Espinoza
President

Coastal Bend College does not discriminate on the basis of race, creed, color, national origin, gender, age or disability.

# Adult Continuing Education

## Certificate of Completion

Is awarded to:

**Joel Jean**

98523-179

Who has successfully completed 20 hours of

## Trade Math

While exhibiting exceptional involvement and drive for self-improvement

_P. Pugh_ / ACE Coordinator
F.C.I. Three Rivers, Texas

October 2014

Date

APP 2 · 10



# Adult Continuing Education

## Certificate of Completion

Is awarded to:

**Joel Jean**

98523-179

Who has successfully completed 20 hours of

## Plumbing

While exhibiting exceptional involvement and drive for self-improvement

*P. Pugh*
F.C.I. Three Rivers, Texas
ACE Coordinator

1/8/2015
Date

APP 2 · 11

# Adult Continuing Education

## Certificate of Completion

Is awarded to:

**Joel Jean**

98523-179

Who has successfully completed 20 hours of

Electric I

While exhibiting exceptional involvement and drive for self-improvement



_P. Pugh_ / ACE Coordinator

F.C.I. Three Rivers, Texas

6/16/2015

Date

APP 2 · 12

APP 2 · 13

# Certificate of Completion

awarded to:

## Joel Jean

98523-179

completion of A.C.E. class

### Keyboarding 1

On This 29th Day of June 2015

*J. Lo...* 
*E. Coordinator*



# Adult Continuing Education

## Certificate of Completion

Is awarded to:

**Joel Jean**

98523-179

Who has successfully completed 20 hours of

**Electric II**

While exhibiting exceptional involvement and drive for self-improvement

2015

*P. Pugh* / ACE Coordinator
F.C.I. Three Rivers, Texas

8/31/2015
Date

APP 2 • 14

APP 2 · 15

# Adult Continuing Education

## Certificate of Completion

Is awarded to:

**Joel Jean**

98523-179

Who has successfully completed 20 hours of

Electric III

While exhibiting exceptional involvement and drive for self-improvement

P. Pugh / ACE Coordinator
F.C.I. Three Rivers, Texas

11/26/2015
Date

APP 2 · 16

# Certificate of Achievement

has successfully completed the required coursework for

## Joel Jean

# Employment Opportunities

Awarded by the Department of Education
this 14th day of March, 2018

_M. Robinson_
M. Robinson, Assistant Supervisor of Education

_B. Perkins_
B. Perkins, R.P.P. Coordinator

APP 2 · 17

# Certificate of Achievement

## Joel Jean

has successfully completed the required coursework for

## Employment Opportunities

Awarded by the Department of Education

this 13th day of June, 2018

_M. Robinson_
M. Robinson, Assistant Supervisor of Education

_B. Perkins_
B. Perkins, R.P.P. Coordinator

APP 2 · 18

# Certificate of Achievement

has successfully completed the required coursework for

## Joel Jean

### Money Smart

Awarded by the Department of Education

this 14th day of June, 2018

*M. Robinson*
M. Robinson, Assistant Supervisor of Education

*B. Perkins*
B. Perkins, R.P.P. Coordinator

APP. 2 · 19

# American Society for Quality

## Joel F. Jean

has satisfactorily fulfilled the requirements established
by the Society for professional attainment in

### Quality Improvement

and is, therefore, certified by the Society as a

## Certified Quality Improvement Associate

Certification Number 14258

Certification Date 6/21/2019



Chair, Certification Board



Chair

APP 2 · 20

# CERTIFICATE COMPLETION

AWARDED TO

# Joel Francois Jean

For completing the Employment Skills RPP Class

Awarded this 8 th day of June, 2022

*Dr. Gregure* RPP Coordinator



## Certificate of Completion

*This is to certify that*

### Joel Jean

*has been certified as a*

Certified by
VGI Training
EPA Approved
September 30, 1993

Technician TYPE UNIVERSAL

*as required by 40 CFR 82 Subpart F.*

| 2140113 | 12/19/1996 | |
|---|---|---|
| Certificate Number | Date | President VGI Training Div |

△  △  △  △  △  DETACH CERTIFICATE HERE  △  △  △  △  △

## Certificate of Completion
*This is to certify that*
Joel Jean
*has been certified as a*
Certified by
VGI Training
EPA Approved
September 30, 1993
Technician TYPE UNIVERSAL
*as required by 40 CFR 82 Subpart F.*

| 2140113 | 12/19/1996 | |
|---|---|---|
| Certificate Number | Date | President VGI Training Div |

## Type(s) Sought:

## Test Results

|  | Score | Grade to pass | Passed |
|---|---|---|---|
| Core | 24 | 18 | Y |
| Type I | 23 | 18 | Y |
| Type II | 23 | 18 | Y |
| Type III | 23 | 18 | Y |
| Universal | Requires passing scores (Y) in all Types. | | Y |

Joel Jean
FCI Three Rivers PO Box 4200
Three Rivers TX 78071-

*To receive a "I help protect the Ozone Layer!" bumpersticker, please send a self-addressed stamped envelope to:*

*VGI Training/Bumpersticker*
*1156 107th St.*
*Arlington TX 76011*

## *Congratulations*

We have processed your test and your scores, certificate, and wallet card are attached.

APP 2 • 21

Refrigerant containment is a technique of the professional.

Please keep that professionalism in mind as you go about your daily work.



APP 2 · 22

# WINDHAM SCHOOL DISTRICT

## Huntsville, Texas

*This is to acknowledge that*

### JOEL FRANCOIS JEAN

*has creditably completed the course of*

## MAJOR APPLIANCE SERVICE TECHNOLOGY

*and as evidence is awarded this*

## Career and Technology Education Certificate

FEBRUARY 4, 1998

_____
Date

_____
Windham School District Administrator

DUPLICATE



APP 2 · 23

# WINDHAM SCHOOL DISTRICT

## Huntsville, Texas

*This is to acknowledge that*

### JOEL FRANCOIS JEAN

*has creditably completed the course of*

**HEATING, VENTILATION, AIR CONDITIONING & REFRIGERATION**

*and as evidence is awarded this*

*Career and Technology Education Certificate*

DECEMBER 20, 1996

*Date*

Windham School District Administrator

DUPLICATE

| | | | |
|---|---|---|---|
| JOEL FRANCOIS JEAN | SPN: 01149953 998 | DATE PREPARED: 032092 | BY: ld DA NO.: 292 |
| 115 ARBOR #12 | DOB: BM/092973 | AGENCY: HCOCU/BAYTOWN O/R NO.: TF-2431 | |
| BAYTOWN, TX | | NCIC CODE: 3533-10 ARREST DATE: 032092 | |

FELONY CHARGE:

POSS CONT SUBST W/INT TO DELIVER (CRACK)    185th    RELATED CASES:    173  Vol___ Page___ AX GM  95

CAUSE NO.: 627436    GJ

HARRIS COUNTY DISTRICT COURT NO.: 178th    BAIL $ 10,000.

PRIOR CAUSE NO.: _____

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas,

JOEL FRANCOIS JEAN

hereafter styled the Defendant, heretofore on or about    MARCH 20, 1992

then and there unlawfully

intentionally and knowingly possess with intent to deliver, a controlled substance, namely, cocaine, weighing less than 28 grams by aggregate weight, including any adulterants or dilutants.

A·P·P·E·N·D·I·X  3

AGAINST THE PEACE AND DIGNITY OF THE STATE.

185th    Foreman

T Talmadge Sharp

FOREMAN OF THE GRAND JURY

1992 NOV 24 PM 3:06

APP 3 · 01

(F)

tc 999

THE STATE OF TEXAS

NO. _601930_    IN THE _248th_ DISTRICT

VS.

COURT OF HARRIS COUNTY, TEXAS

_TRAL FRANCOIS JOHN_    Change of Venue From: _N/A_

JUDGMENT ON PLEA OF GUILTY OR NOLO CONTENDERE BEFORE COURT - WAIVER OF JURY TRIAL

| Judge Presiding: _BRIAN RAINS_ | Date of Judgment: _05/26/1992_ |
|---|---|
| Attorney for State _ELSA ALCALA_ | Attorney for Defendant: _JIM LAVINE JR_ [ ] Waived Counsel |

Offense Convicted of    unlawfully, intentionally and knowingly possess a controlled substance, namely _WITH INTENT TO DELIVER_
_COCAINE WEIGHING LESS THAN 28 GRAMS_
_BY AGGREGATE WEIGHT INCLUDING ANY ADULTERANT_
_OR DILUTANT DILUTANT_    Date Offense Committed: _03/20/1992_

Degree: _1st_

Charging Instrument: Indictment/Information    Plea: Guilty/Nolo Contendere

Terms of Plea Bargain (In Detail): _5    YEARS    TDC_

| Plea to Enhancement Paragraph(s): _N/A_ | Findings on Enhancement: _N/A_ |
|---|---|
| Findings on Use of Deadly Weapon: _N/A_ | |
| Date Sentence Imposed: _05/26/1992_ | Costs: _Guilty_ |
| Punishment and Place of Confinement: Institutional Division _5 YEARS TDC_ | Fine: _N/A_    Date to Commence: _03-20-1992_ |
| Time Credited: _N/A_ | Total Amount of Restitution/Reparation/Reward: |
| Concurrent Unless Otherwise Specified: | Restitution/Reward to be Paid to: Name: |
| Statement of amount of Payment Required/Terms of Payment: | Address: |
| Name of Victim/Other Person/Agency: | Mailing Address: |

This cause being this day called for trial, the State appeared by her District Attorney as named above and the Defendant named above appeared in person and either by Counsel as named above or knowingly, intelligently and voluntarily waived the right to representation by counsel as indicated above, and both parties announced ready for trial. The Defendant, waived his right of trial by jury, and pleaded as indicated above; thereupon the Defendant was admonished by the Court as required by Article 26.13, Code of Criminal Procedure. And it appearing to the Court that the Defendant is mentally competent to stand trial, the plea is freely and voluntarily made, and the Defendant is aware of the consequences of his plea, the plea is hereby received by the Court and entered of record. The Court, having heard the evidence submitted, found the Defendant guilty of the offense indicated above, a felony.

[ ]  The Defendant, with the written agreement of the court, requested that a presentence investigation report not be made by the Probation Officer.

[✓]  The Court directed the Probation Officer to prepare a presentence investigation report.

On the _26th_ day of _MAY_, A.D. 19_92_ the Court assessed punishment as indicated above.

It is therefore CONSIDERED, ORDERED AND ADJUDGED by the Court that the Defendant is guilty of the offense indicated above, a felony, and that the said Defendant committed the said offense on the date indicated above, and that he be punished by confinement in the Institutional Division, Department of Criminal Justice for the period indicated above, and that the State of Texas do have and recover of the Defendant all costs of the prosecution, for which execution will issue.

And thereupon the said Defendant was asked by the Court whether he had anything to say why sentence should not be pronounced against him, and he answered nothing in bar thereof. Whereupon the Court proceeded, in the presence of said Defendant, to pronounce sentence against him as follows, to wit: "It is the order of the Court that the Defendant, named above who has been adjudged to be guilty of the offense indicated above, a felony, and whose punishment has been assessed at confinement in the Institutional Division; Department of Criminal Justice for the period indicated above, be delivered by the Sheriff of Harris County, Texas, immediately to the Director of Institutional Division of the State of Texas, or other person legally authorized to receive such convicts, and said Defendant shall be confined in said Institutional Division for the period indicated above, in accordance with the provisions of the law governing the Institutional Division, Department of Criminal Justice.

The said Defendant was remanded to jail until said Sheriff can obey the directions of this sentence.

Plea of Guilty or Nolo Contendere Before the Court
CRM-2  R08-22-90    -1-    APP 3 · 02

V0707 P0106

THE STATE OF TEXAS
VS.
JOEL FRANCOIS JEAN
2500 EAST JAMES #C-4
BAYTOWN, TX. 77520

NCIC CODE: 3533 10
FELONY CHARGE:
POSS. CONTROLLED SUBSTANCE W/INTENT TO DELIVER
CAUSE NO: _____408455
HARRIS COUNTY
DISTRICT COURT NO: _____339

D.A. LOG NUMBER: 107240
CJIS TRACKING NO.: 9000998689-A001
SPN: 01149953 994              BY: JH     DA NO: 374
DOB: BM/9-29-73               AGENCY: BAYTOWN PD
DATE PREPARED: 4/8/94         O/R NO: 9413989
                              ARREST DATE: 4-8-94
RELATED CASES:  JENNIFER A. ONEAL

179th
GJ

Vol ___ Page ___ AXGM    BAIL: $ 20,000
                         PRIOR CAUSE NO:

---

## IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, **JOEL FRANCOIS JEAN**, hereafter styled the Defendant, on or about **APRIL 8, 1994**, did then and there unlawfully, intentionally and knowingly possess with intent to deliver a controlled substance, namely, COCAINE, weighing less than 28 grams by aggregate weight, including any adulterants and dilutants.

        Before the commission of the offense alleged above on May 26, 1992, in Cause
No. 617881, in the 176th District Court of Harris County, Texas, the Defendant was
convicted of the felony of delivery of a controlled substance, namely, Cocaine.

FOREPERSON     179TH

*[signature]*

APP 3 · 03

**AGAINST THE PEACE AND DIGNITY OF THE STATE.**

FOREMAN OF THE GRAND JURY

## INDICTMENT

THE STATE OF TEXAS                                    IN THE _339_ DISTRICT
vs. _Joel Francois Jean_
_____                               COURT OF HARRIS COUNTY, TEXAS

                                        Change of Venue From: _N/A_

JUDGMENT ON PLEA OF GUILTY/NOLO CONTENDERE/NOT GUILTY BEFORE COURT-WAIVER OF JURY TRIAL

Judge Presiding _Joseph Guarino_      Date of Judgment: _August 25, 1994_

Attorney                              Attorney                          _Waived_
for State _Colleen Barnett_           for Defendant _John Denninger_    Counsel

Offense     _unlawfully, intentionally and knowingly possess with_
Convicted of: _intent to deliver a controlled substance, namely_
_Cocaine, weighing less than 28 grams by aggregate weight,_
_including any adulterants and dilutants_      Date Offense
        Degree: _1st_                          Committed: _April 8, 1994_

Charging
Instrument: (Indictment)/Information          Plea: Guilty/Nolo Contendere/(Not Guilty)

Terms of Plea
Bargain (In Detail):     _Court Trial / PSI_


                    (Circle appropriate selection — N/A = not available or not applicable)

Plea to Enhancement                    Findings on
Paragraph(s): (True) Not True | N/A    Enhancement:  (True) Not True | N/A

Affirmative Findings: (Circle appropriate selection — N/A = not available or not applicable)
DEADLY WEAPON: Yes |No |(N/A)  FAMILY VIOLENCE: Yes |No | (N/A)   HATE CRIME: Yes |No |(N/A)

Date Sentence                Date to
Imposed: _October 10, 1994_  Commence _October 10, 1994_  Costs: # _139.50_

Punishment Imposed and  _18 yrs TDCJ-ID_
Place of Confinement: Institutional/State Jail Division        /Fine: # _1,000.00_

Time Credited: _185 days_    Total Amount of
                             Restitution/Reparation/Reward: _N/A_

Concurrent Unless Otherwise Specified: _____   Restitution/Reward to be Paid to:
                                                          Name: _____
                                                          Address: _____
Statement of Amount of Payment(s) required/Terms of Amount: _____

        This cause being called for trial, the State appeared by her District Attorney as named above and the Defendant named above appeared in person and
either by Counsel as named above or knowingly, intelligently and voluntarily waived the right to representation by counsel as indicated above, and both parties an-
nounced ready for trial. The Defendant, waived his right of trial by jury, and pleaded as indicated above; thereupon the Defendant was admonished by the Court as
required by Article 26.13, Code of Criminal Procedure. And it appearing to the Court that the Defendant is mentally competent to stand trial, the plea is freely and
voluntarily made, and the Defendant is aware of the consequences of his plea, the plea is hereby received by the Court and entered of record. The Court, having heard
the evidence submitted, found the Defendant guilty of the offense indicated above, a felony.

        It is therefore CONSIDERED, ORDERED AND ADJUDGED by the Court that the Defendant is guilty of the offense indicated above, a felony, and
that the said Defendant committed the said offense on the date indicated above, and that he be punished by confinement in the Institutional Division or State Jail
Division, Texas Department of Criminal Justice, as indicated above, for the period indicated above, and that the State of Texas do have and recover of the Defendant
all costs of the prosecution, for which execution will issue. Further, the court finds the Presentence Investigation, if so ordered, was done according to the applicable
provisions of Art. 42.12, Sec. 9, Code of Criminal Procedure.

        And thereupon the said Defendant was asked by the Court whether he had anything to say why sentence should not be pronounced against him, and he
answered nothing in bar thereof.  Whereupon the Court proceeded, in the presence of said Defendant, to pronounce sentence against him as follows, to wit: "It is
the order of the Court that the Defendant, named above who has been adjudged to be guilty of the offense indicated above, a felony, and whose punishment has been
assessed at confinement in the Institutional Division or State Jail Division, Texas Department of Criminal Justice, as indicated above, for the period indicated above,"
be delivered by the Sheriff of Harris County, Texas, immediately to the Director of Institutional Division or State Jail Division, Texas Department of Criminal Justice,
as indicated above, for the period indicated above, or other person legally authorized to receive such convicts, and said Defendant shall be confined in said Institutional
Division or State Jail Division, Texas Department of Criminal Justice, as indicated above, for the period indicated above, in accordance with the provisions of the
law governing the Institutional Division, or State Jail Division, Texas Department of Criminal Justice.

        The said Defendant was remanded to jail until said Sheriff can obey the directions of this sentence.

RECORDER'S MEMORANDUM:
This instrument is of poor quality
and not satisfactory for photographic
recordation; and/or alterations were
present at the time of filming.

                                                                        APP 3 · 04

Plea of Guilty/Nolo Contendere/Not Guilty Before the Court
CRM-2 R08-12-94                    -1-



**U. S. Department of Justice**
Federal Bureau of Prisons
UNICOR Federal Prison Industries
Federal Correctional Institution
Beaumont, Texas 77705

June 11, 2021

A·P·P·E·N·D·I·X   4

**Memorandum For:   To Whom It May Concern**

**Thru:**          Acey, XA Unit Manager

**From:**          B. Sauls, Quality Assurance Manager

**Subject:**       Joel Jean #98523-179

During my tenure in managerial roles within FPI UNICOR Beaumont, inmate Joel Jean #98523-179, has represented himself to be a valuable, trustworthy and indispensable asset. Inmate Jean is and remains a integral human resource to the FPI UNICOR administrative team in his role as an Administrative Clerk.

Inmate Jean is a true testament of an individual, whom has educated not only himself, but many of his peers, as he prepares for re-entry back into society. Evidenced not only by his commitment to FPI UNICOR inmate Jean has cemented his mastery of vocational abilities in carpentry and welding through the Education Department. We here at FPI UNICOR are proud to assert that inmate Jean was part of a select group of inmates who were chosen to take the Certified Quality Improvement Associate course, which inmate Jean also mastered and has led to his being recognized by the American Society for Quality with a professional certification in Certified Quality Improvement Associate.

I have over 20 years of experience within the Federal Bureau of Prisons and very rarely have I come across an inmate that has truly worked on himself from the day of his admittance in the custody of the Bureau of Prisons, at bettering himself, for an eventual successful return into society. Due to the continuing education inmate Jean has obtained and continues to pursue, relative to his entrance back into society I am of the opinion, that inmate Jean has not only accepted responsibility for his actions, but chance afforded him, through compassionate release.

Inmate Jean deserves an opportunity to prove himself once again, that he can and will be a productive member of society by mentoring those less fortunate, who may continue to fail and have no hope of a bright future. I applaud his continuing efforts to be a better man, an individual whom has learned from his mistakes and move forward, with no regrets and never once blaming others for his choices in life, but accepting full responsibility for his actions.

I hope you find this helpful, in determining inmate Joel Jean is ready for a successful return to society.



**U. S. Department of Justice**
Federal Bureau of Prisons
UNICOR Federal Prison Industries
Federal Correctional Institution
Beaumont, Texas 77705

June 21, 2021

**Memorandum For:**  **To Whom It May Concern**

**Thru:**                    Acey, XX Unit Manager

**From:**                   C/Clark, Fabric Work Supervisor

**Subject:**                Joel Jean #98523-179

Throughout my career in corrections and subsequently in FPI UNICOR Beaumont, inmate Joel Jean #98523-179, stands out within his administrative role as an individual whose level of knowledge and expertise has led him to become a consistent and indispensable employee. Inmate Jean is counted upon to perform advanced business equations, statistical and problem solving techniques with a high degree of precision that is vital to maintaining our forty-nine (49) million dollar Department of Defense contract here at FPI UNICOR Beaumont..

Inmate Jean approaches his assignments with tenacity, dedication and unequivocal focus which has a direct impact on FPI UNICOR Beaumont being one of the only factory's in the clothing and textile group to remain open during the COVID-19 pandemic. Witnessing inmate Jean tackle challenge after challenge until a successful result is achieved is one of the rare qualities I have seen inmate Jean demonstrate time and again in the face of adversity. Perhaps it is this documented trait alone that can provide substantial evidence that inmate Jean's exceptional capabilities are best served providing for himself, his family and serving his community, as opposed to expending government funds to "warehouse" inmate Jean.

I have over two decades of experience in corrections on the state and federal level and I find that inmates who apply themselves to reentry from the day of admittance while in the custody rarely ever recidivise and return to prison. I am of the opinion and would solemnly affirm that inmate Jean is one of those rare individuals who have accepted responsibility for his actions, but chance afforded him, through compassionate release would continue his pursuit of excellence as contributing member of society.

As a citizen-servant myself I would acknowledge the fact inmate Jean could become a vital spokesmen and shining example to thwart recidivism, which has led to the overcrowded environment in which I am employed.

I pray you find this helpful determining the purpose of corrections has been fulfilled and inmate Joel is ready for a successful return to society.

A·P·P·E·N·D·I·X 5

OPI:          CPD/CPB
NUMBER:       5100.08, CN-1
DATE:         September 4, 2019
SUBJECT:      Inmate Security Designation and Custody
Classification



**U.S. Department of Justice**

Federal Bureau of Prisons

# Program

# Statement

C H A N G E   N O T I C E OPI:  CPD/CPB NUMBER:  5100.08, CN-1

DATE:   September 4, 2019

# Inmate Security Designation and Custody Classification

pro

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

1

APP 5 · 01

$$\boxed{\text{A·P·P·E·N·D·I·X}\quad 5}$$

## 5. HISTORY OF ESCAPE OR ATTEMPTS

5. HISTORY OF ESCAPE OR ATTEMPTS

| | NONE | >15 YEARS | 10-15 YEARS | 5-10 YEARS | <5 YEARS | |
|---|---|---|---|---|---|---|
| MINOR   0 | 1 | 1 | 2 | | 3 | |
| SERIOUS   0 | 3(S) | 3(S) | 3(S) | 3(S) | | |

Enter the appropriate number of points that reflect the escape history of the individual, considering only those acts for which there are documented findings of guilt (i.e., DHO, Court, Parole, Mandatory Release, or Supervised Release Violation).

Escape

History includes the individual's entire background of escapes or attempts to escape from confinement, or absconding from community supervision, excluding the current term of confinement.

**EXCEPTION:**   Any institution disciplinary hearing (UDC or DHO) finding that a prohibited act was committed during the current term of confinement will be scored as a history item.

State disciplinary findings are scored unless there is documentation that the state disciplinary proceedings did not afford due process protection to the inmate.

**Fleeing or Eluding Arrest**, Failure to Appear for traffic violations, runaways from foster homes and similar behavior **should not be scored under the Escape History item, even if clearly documented**, but should be considered on a case-by-case basis under the Management Variable "Greater Security."   Failure to Appear or Flight to Avoid Prosecution for any offense however, must be counted when there is a documented finding of guilt.

pro

1

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

U.S. Department of Justice
Office of the Attorney General

## A·P·P·E·N·D·I·X  6

# First Step Act

# Annual Report

# April 2022



Table 2a. New Male <u>General</u> Tool Cut Points

|  | PATTERN Score | Population Percentage | Group Population Percentage | Recidivism Rate | Group Recidivism Rate |
|---|---|---|---|---|---|
| → Minimum | -22 to 5 | 10.5 | 55.2 | 8.7 | 28.1 |
| → Low | 6 to 39 | 44.7 |  | 32.7 |  |
| → Medium | 40 to 54 | 23.0 | 44.8 | 62.9 | 73.1 |
| → High | 55 to 109 | 21.8 |  | 80.4 |  |

Table 2b.  Impacts of New Male General Tool Cut Points

|  | Total | White | Black | Hispanic | Native American | Asian |
|---|---|---|---|---|---|---|
| Current – Percent Males in Lower Risk Level Groups | 44.0 | 55.7 | 31.7 | 51.0 | 21.7 | 70.0 |
| Current – Ratio of White:Minority | - | - | 1.76:1 | 1.09:1 | 2.57:1 | 0.80:1 |
| New – Percent Males in Lower Risk Level Groups | 55.2 | 65.2 | 43.1 | 64.4 | 33.8 | 78.9 |
| New – Raw Difference from Current | 11.2 | 9.5 | 11.5 | 13.4 | 12.2 | 8.9 |
| New – Percent Increase from Current | 25.5 | 17.0 | 36.3 | 26.2 | 56.1 | 12.7 |
| New – Ratio of White:Minority | - | - | 1.42:1 | 1.00:1 | 1.70:1 | 0.84:1 |

APP 6 · 02

15

females in the minimum RLC under the violent tool have a predicted risk of violent recidivism of 1.6 percent, and females in the low RLC have a predicted risk of violent recidivism of 7.6 percent.

In addition, Tables 1a and 1b demonstrate that most of the individuals score in the minimum or low risk level groups under the violent tools. Among males, 57.6 percent of the population falls into either the minimum or low RLC for violent recidivism, and among females, 94 percent of the population falls into either the minimum or low RLC for violent recidivism.

Table 1a. Male Violent Tool Cut Points [Unchanged]

|  | PATTERN Score | Population Percentage | Group Population Percentage | Recidivism Rate | Group Recidivism Rate |
|---|---|---|---|---|---|
| Minimum | -11 to 7 | 16.8 | 57.6 | 1.4 | 6.9 |
| Low | 8 to 24 | 40.8 | | 9.2 | |
| Medium | 25 to 31 | 15.9 | 42.4 | 20.2 | 30.1 |
| High | 32 to 71 | 26.5 | | 36.1 | |

Table 1b. Female Violent Tool Cut Points [Unchanged]

|  | PATTERN Score | Population Percentage | Group Population Percentage | Recidivism Rate | Group Recidivism Rate |
|---|---|---|---|---|---|
| Minimum | -11 to 1 | 50.1 | 94.0 | 1.6 | 4.4 |
| Low | 2 to 11 | 43.9 | | 7.6 | |
| Medium | 12 to 17 | 5.5 | 6.1 | 19.4 | 21.4 |
| High | 18 to 30 | .6 | | 39.1 | |

As a general matter, the violent PATTERN tool operates to impose a public safety check on the operation of the FSA's system for awarding earned time credits and permitting inmates to transfer out of correctional settings at an earlier date than their sentences otherwise provide. The First Step Act provides that a "prisoner being placed in prerelease custody" after earning time credits must "ha[ve] been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner" (unless he or she qualifies for a warden-administered exception). 18 U.S.C. § 3624(g)(1)(D)(i). For a prisoner "being placed in supervised release" after earning time credits, the prisoner must "be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner." 18 U.S.C. § 3624(g)(1)(D)(ii). To determine this eligibility, all inmates receive scores under both the general PATTERN tool and the violent PATTERN tool. If the risk level category under the violent tool is higher, the violent

APP 6 • 03

## MALE PATTERN RISK SCORING

| Register Number: | | Date: | | | |
|---|---|---|---|---|---|
| Inmate Name: | | | | | |

| MALE RISK ITEM SCORING | CATEGORY | GENERAL SCORE | Enter Score | VIOLENT SCORE | Enter Score |
|---|---|---|---|---|---|
| 1. Current Age | > 60 | 0 | | 0 | |
| | 51-60 | 7 | | 4 | |
| | 41-50 | 14 | | 8 | |
| | 36-40 | 21 | | 12 | |
| | 26-35 | 28 | | 16 | |
| | < 26 | 35 | | 20 | |
| 2. Walsh w/Conviction | No | 0 | | 0 | |
| | Yes | 2 | | 0 | |
| 3. Violent Offense (PATTERN) | No | 0 | | 0 | |
| | Yes | 5 | | 7 | |
| 4. Criminal History Points | 0 - 1 Points | 0 | | 0 | |
| | 2 - 3 Points | 8 | | 3 | |
| | 4 - 6 Points | 16 | | 6 | |
| | 7 - 9 Points | 24 | | 9 | |
| | 10 - 12 Points | 32 | | 12 | |
| | > 12 Points | 40 | | 15 | |
| 5. History of Escapes | None | 0 | | 0 | |
| | > 10 Years Minor | 3 | | 2 | |
| | 5 - 10 Years Minor | 6 | | 4 | |
| | < 5 Years Minor/Any Serious | 9 | | 6 | |
| 6. History of Violence | None | 0 | | 0 | |
| | > 10 Years Minor | 1 | | 2 | |
| | > 15 Years Serious | 2 | | 4 | |
| | 5 - 10 Years Minor | 3 | | 6 | |
| | 10 - 15 Years Serious | 4 | | 8 | |
| | < 5 Years Minor | 5 | | 10 | |
| | 5 - 10 Years Serious | 6 | | 12 | |
| | < 5 Years Serious | 7 | | 14 | |
| 7. Education Score | Not Enrolled | 0 | | 0 | |
| | Enrolled in GED | -1 | | -1 | |
| | HS Degree / GED | -2 | | -2 | |
| 8. Drug Program Status | No DAP Completed | 0 | | 0 | |
| | NRDAP Complete | -2 | | -1 | |
| | RDAP Complete | -4 | | -2 | |
| | No Need | -6 | | -3 | |
| 9. All Incident Reports  (120 months) | 0 | 0 | | 0 | |
| | 1 | 1 | | 1 | |
| | 2 | 2 | | 2 | |
| | > 2 | 3 | | 3 | |
| 10. Serious Incident Reports  (120 months) | 0 | 0 | | 0 | |
| | 1 | 1 | | 1 | |
| | 2 | 2 | | 2 | |
| | > 2 | 3 | | 3 | |
| 11. Time Since Last Incident Report | 12+ months or no incidents | 0 | | 0 | |
| | 7-12 months | 1 | | 1 | |
| | 3-6 months | 2 | | 2 | |
| | <3 | 3 | | 3 | |
| 13. FRP Refuse | NO | 0 | | 0 | |
| | YES | 2 | | 0 | |
| 14. Programs Completed | 0 | 0 | | 0 | |
| | 1 | -3 | | -1 | |
| | 2 - 3 | -6 | | -2 | |
| | 4 - 10 | -9 | | -3 | |
| | > 10 | -12 | | -4 | |
| 15. Work Programs | 0 Programs | 0 | | 0 | |
| | 1 Program | -1 | | -1 | |
| | >1 Program | -2 | | -2 | |
| Total Score (Sum of Columns) | | General: | | Violent: | |
| General/Violent Risk Levels | | General: | | Violent: | |
| OVERALL MALE PATTERN RISK LEVEL | | | | | |

```
 BMLCQ  606.00  *      MALE CUSTODY CLASSIFICATION FORM     *       10-11-2022
PAGE 001 OF 001                                                     14:40:34
                         (A) IDENTIFYING DATA
REG NO..: 98523-179           FORM DATE: 12-12-2021          ORG: BML
NAME....: JEAN, JOEL FRANCOIS
                                     MGTV: NONE
PUB SFTY: NONE                       MVED:
                         (B) BASE SCORING
DETAINER: (0) NONE            SEVERITY.......: (3) MODERATE
MOS REL.: 78                  CRIM HIST SCORE: (10) 13 POINTS
ESCAPES.: (1) > 10 YRS MINOR  VIOLENCE.......: (1) > 10 YRS MINOR
VOL SURR: (0) N/A             AGE CATEGORY...: (2) 36 THROUGH 54
EDUC LEV: (0) VERFD HS DEGREE/GED  DRUG/ALC ABUSE.: (0) NEVER/>5 YEARS
                         (C) CUSTODY SCORING
TIME SERVED.....: (4) 26-75%   PROG PARTICIPAT: (2) GOOD
LIVING SKILLS...: (2) GOOD     TYPE DISCIP RPT: (5) NONE
FREQ DISCIP RPT.: (3) NONE     FAMILY/COMMUN..: (4) GOOD


                   --- LEVEL AND CUSTODY SUMMARY ---

BASE CUST VARIANCE  SEC TOTAL  SCORED LEV MGMT SEC LEVEL  CUSTODY  CONSIDER
+17  +20    -2        +15       LOW        N/A              IN     DECREASE


G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

APP 6 · 05

## DOCUMENTATION OF INFORMAL RESOLUTION ATTEMPT

Bureau of Prisons Program Statement No. 1330.17, <u>Administrative Remedy Program</u>, (August 20, 2012), requires, in most cases, that inmates attempt informal resolution of grievances prior to filing a formal written complaint. This form shall be used to document your efforts towards informally resolving your grievance.

Inmate Name: JEAN, JOEL F.        Reg. No.: #98523-179   Unit: VA

Date Issued: NOVEMBER 04th, 2022

Specific Complaint and Requested Relief:
      This is to contest the BOP's placement of MINOR ESCAPE on my Custody Classification Form. Specifically, the BOP alleges I have a minor escape occurring over ten years ago. [Exhibit A, § ESCAPES: > 10 YRS MINOR].

      Yet, this is in reference to an evading arrest from around 2003. The Program Statement 5100.08 holds the following for scoring History of Escapes:

          Fleeing or Eluding Arrest...should <u>not</u> be scored under the Escape History item, even if clearly documented,....

                    [PS 5100.08, Ch. 5; attached as Appendix 1].

RELIEF:     In light of this, please remove this from my Custody Classification Form and rescore my ESCAPES as 0.

Efforts Made By Inmate To Informally Resolve Grievance (be specific): **Issues** dealing with changes to BOP records are to be submitted in writing. This BP-8 represents my submission in writing to correct this issue.

_____

_____

Counselor's Comments: _____

_____

_____

_____

_____

_____

_____


_____          _____
Correctional Counselor's Review/ Date        Unit Manager's Review/ Date

| Date BP-8 Returned / Initials | Date BP-9 Given / Initials | Date BP-9 Returned / Initials |
|---|---|---|
| | | |

APP 6 • 06

## DOCUMENTATION OF INFORMAL RESOLUTION ATTEMPT

Bureau of Prisons Program Statement No. 1330.17, Administrative Remedy Program, (August 20, 2012), requires, in most cases, that inmates attempt informal resolution of grievances prior to filing a formal written complaint. This form shall be used to document your efforts towards informally resolving your grievance.

Inmate Name: JEAN, JOEL F.          Reg. No.: #98523-179   Unit: VA

Date Issued: NOVEMBER 04, 2022

Specific Complaint and Requested Relief:
This is to contest the scoring of HISTORY OF ESCAPES on my FSA Recidivism Risk Assessment form. Specifically, I am being improperly scored to have an "escape" on my Custody Classification Form in violation of Program Statement 5100.08; and the FSA Risk Assessment pulls its data from the Custody Classification Form.

I am being scored an "escape" due to an evading arrest from around 1991. BOP policy holds:

Fleeing or Eluding Arrest...should not be scored under the Escape History item, even if clearly documented....
[PS 5100.08, Ch. 5; attached as Appendix 1].

RELIEF: In light of this, please remove the ESCAPE from my FSA Risk Assessment Sheet (Recidivism), and change the value to 0.

Efforts Made By Inmate To Informally Resolve Grievance (be specific): Changes to BOP documents must be submitted in writing, which this BP-8 constitutes.

Counselor's Comments:

Correctional Counselor's Review/ Date          Unit Manager's Review/ Date

Date BP-8 Returned / Initials     Date BP-9 Given / Initials     Date BP-9 Returned / Initials

APP 6 • 07

THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

     BEAUMONT DIVISION


JOEL FRANCOIS JEAN

  Vs.

UNITED STATES OF AMERICA

Re: CASE NO. 1:08-cr-00101-001


     Inside is Joel Francois Jean Motion For Reduction In
Sentence Pursuant to 18 U.S.C. 3582(c)(1)(A), along with a
prepaid envelope. Could I please have a stamped filed copy
of this cover letter sent back to me please. Thank you in
advance.


                       Sincerely,

                       Joel F. Jean #98523-179
                       FCI Beaumont Low
                       P.O. Box 26020
                       Beaumont, Tx 77720



Joel J. Jean  # 98583-179
FCI Beaumont Low
P.O. Box 26020
Beaumont, TX 77720



"LEGAL MAIL"

CLERK U.S. DISTRICT COURT
RECEIVED
NOV 21 2022
EASTERN DIST. OF TEXAS
BEAUMONT, TEXAS

United States District Court
300 Willow Street
Beaumont, TX 77701

