**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | |
|---|---|
| United States of America | Case No. 1:08-cr-00101-MJT-ZJH |
| v. | |
| Joel Francois Jean | |

**AMENDED MOTION FOR REDUCTION IN SENTENCE**
**PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

**HEARING REQUESTED**

i

████████

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     BACKGROUND .............................................................................................. 1

        A.      Background of Jean's 292-month prison sentence imposed in 2009. ............... 1

        B.      Significant changes in drug-sentencing laws since Jean's sentencing. ............. 3

III.    ARGUMENT ................................................................................................... 4

        A.      Jean has exhausted administrative remedies. ...................................... 4

        B.      Extraordinary and compelling reasons support a sentence reduction. ........... 5

                1.      Non-retroactive changes in sentencing law. ................................. 6

                        (a)     Jean does not qualify as a Career Offender under current
                                law. ............................................................................. 6

                        (b)     Jean would also be eligible for the "Drugs Minus Two"
                                reduction. ..................................................................... 7

                2.      The sheer length of Jean's sentence highlights extraordinary
                        disparities. .................................................................................. 7

                        (a)     Jean received a harsher sentence than his co-defendants ............... 7

                        (b)     Jean received a harsher sentence than the average Texas
                                defendant sentenced for the same crime with the same
                                criminal history category. ............................................. 8

                        (c)     Jean received a harsher sentence than defendants
                                convicted of more heinous offenses ................................. 9

                3.      The length of time already served supports Jean's compassionate
                        release. ......................................................................................... 10

                4.      Jean's post-sentencing conduct and rehabilitation support a
                        conclusion that extraordinary and compelling reasons exist to
                        release him on time served ........................................................... 10

        C.      The sentencing factors in 18 U.S.C. § 3553(a) support compassionate
                release. ......................................................................................................... 10

                1.      Nature, circumstances of offense; need to reflect seriousness of
                        offense, promote respect for the law, just punishment
                        [§ 3553(a)(1), (a)(2)(A)] ............................................................. 10

2.      History and characteristics of the defendant [§ 3553(a)(1)] ..................... 11

3.      The need to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant [§ 3553(a)(2)(B), (a)(2)(C)] ..................................................... 13

4.      The need to provide defendant educational or vocational training, medical care, or other correctional treatment [§ 3553(a)(2)(D)] .............. 14

5.      The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct [§ 3553(a)(6)] ................................................................. 14

**D.      Compassionate release poses no danger to society under 18 U.S.C. § 3142(g). ............................................................................................. 14**

**IV.      CONCLUSION ........................................................................................ 15**

## TABLE OF AUTHORITIES

### Cases

*Pepper v. U.S.*,
    562 U.S. 476 (2011) ..................................................................................................11

*U.S. v. Baker*,
    2020 WL 4696594 (E.D. Mich. Aug. 13, 2020) ......................................................9

*U.S. v. Brown*,
    457 F. Supp. 3d 691 (S.D. Iowa 2020) ..................................................................13

*U.S. v. Cabrera*,
    2022 WL 93614 (E.D. La. Jan. 10, 2022) ...............................................................9

*U.S. v. Cantu-Rivera*,
    2019 WL 2578272 (S.D. Tex. June 24, 2019) ...................................................5, 10

*U.S. v. Cooper*,
    996 F. 3d 283 (5th Cir. 2021) ..............................................................................4, 5

*U.S. v. Decator*,
    452 F. Supp. 3d 320 (D. Md. 2020) ..................................................................11, 13

*U.S. v. Fowler*,
    544 F.Supp.3d 764 (N.D. Tex. Feb. 24, 2021) ...................................................5, 9

*U.S. v. Garrett*,
    15 F.4th 335 (5th Cir. 2021) ...................................................................................5

*U.S. v. Hebert*,
    574 F. Supp. 3d 416 (E.D. Tex. Dec. 8, 2021) ............................................. *passim*

*U.S. v. Hickman*,
    2020 WL 6393391 (D. Md. Nov. 2, 2020) ......................................................5, 7, 8

*U.S. v. Hinkle*,
    832 F.3d 569 (5th Cir. 2016) ..............................................................................4, 6

*U.S. v. Hudec*,
    2022 WL 2118974 (S.D. Tex. June 9, 2022) ..........................................................5

*U.S. v. Lyle*,
    506 F. Supp. 3d 496 (S.D. Tex. Dec. 9, 2020) .......................................................5

*U.S. v. Marks*,
    455 F. Supp. 3d 17 (W.D.N.Y. 2020) ..................................................................15

*U.S. v. Owen*,
    2021 WL 3603598 (E.D. Tex. Aug. 13, 2021) ..................................................3, 10

*U.S. v. Perez*,
    2020 WL 1180719 (D. Kan. Mar. 11, 2020) ........................................................13

*U.S. v. Perry*,
  2020 WL 7024915 (E.D. Mich. Nov. 30, 2020) ................................................5, 7

*U.S. v. Quinn*,
  467 F. Supp. 3d 824 (N.D. Cal. 2020) ..............................................5, 7, 9

*U.S. v. Redd*,
  444 F.Supp.3d 717 (E.D. Va. 2020) ......................................................15

*U.S. v. Reyes*,
  2021 WL 5909849 (W.D.N.C. Dec. 12, 2021) ..............................................6

*U.S. v. Rodriguez-Castro*,
  814 F. App'x 835 (5th Cir. 2020), cert. denied, 141 S. Ct. 900 (2020)................................4, 6

*U.S. v. Shkambi*,
  993 F.3d 388 (5th Cir. 2021) ......................................................4, 5, 14

*U.S. v. Tanksley*,
  848 F.3d 347 (5th Cir. 2017) ......................................................4, 6

*U.S. v. Williams*,
  2020 WL 1751545 (N.D. Fla. Apr. 1, 2020)........................................15

## Statutes

18 U.S.C. § 924(c) ..............................................................................2, 6

18 U.S.C. § 3142(g) ...........................................................................14

18 U.S.C. § 3553(a) ........................................................................ *passim*

18 U.S.C. § 3582(c)(1)(A) ..............................................................1, 4, 5

Public Law 111-220, 124 Stat. 2372 ...............................................3

Public Law 115-391, 132 Stat. 5194, 5239 ...................................3

Texas Health & Safety Code § 481.112 ......................................2, 4

## Rules & Guidelines

USSG § 1B1.13 .................................................................................5, 14

USSG § 4B1.1 ..............................................................................2, 4, 6

███████████████

**EXHIBIT LIST**

| Exhibit No. | Description |
|---|---|
|  | Declaration of Joel Francois Jean |
|  | Declaration of Nadia E. Haghighatian |
| 1 | Presentence Investigation Report |
| 2 | Co-Defendants' Judgments |
| 3 | 2008 U.S. Sentencing Commission Guidelines Manual |
| 4 | Jean's Sentence Monitoring Computation Data (Oct. 11, 2022) |
| 5 | Co-Defendants' search results from Bureau of Prisons Inmate Locator |
| 6 | Conservative Leaders' Letter to President Trump Expressing Support for First Step Act (Dec. 1, 2018) |
| 7 | Jean's Letter to Warden, FCI Beaumont Low requesting compassionate release (Oct. 11, 2022) |
| 8 | *United States v. Smith*, No. 14-cr-189 (D.D.C.), D.I. 76 |
| 9 | Judgments from Jean's prior Texas drug-trafficking offenses used for Career Offender status |
| 10 | Excerpts from Sentencing Hearing Transcript |
| 11 | Summary Table of Jean's vs. Co-Defendants' Sentences |
| 12 | Sentence Length Data from Sentencing Commission Interactive Data Analyzer |
| 13 | Excerpts from 2021 Sourcebook of Federal Sentencing Statistics |
| 14 | Letter of Support from UNICOR Supervisor ████ |
| 15 | Letter of Support from UNICOR Supervisor ████ |
| 16 | Associate's Degree |
| 17 | Central Texas College Transcript |
| 18 | Education Certificates |
| 19 | Inmate Education Data Transcript |
| 20 | Letter of Support from A. Thibodeaux-Paris (friend) |
| 21 | Letter of Support from L. Jean (mother) |
| 22 | Letter of Support from J. Jean (son) |
| 23 | Letter of Support from P. Fleming (brother) |
| 24 | Letter of Support from J. Powell (fellow inmate) |
| 25 | Inmate Discipline Data Record |
| 26 | FSA PATTERN Assessment (May 13, 2022) |
| 27 | Male Custody Classification Form (Nov. 7, 2022) |
| 28 | Statement of Reasons |
| 29 | Letter from Joel Francois Jean to Court |
| 30 | Excerpts from First Step Act Annual Report (Apr. 2022) |
| 31 | Example Male PATTERN Risk Scoring Form |
| 32 | Outdated Male Custody Classification Form (Dec. 12, 2021) |
| 33 | Excerpts from BOP Program Statement No. 5100.08, CN-1 |
| 34 | Documentation of Information Resolution Attempts regarding improper "escape" history item on Custody Classification Form and PATTERN Assessment |

## I.    INTRODUCTION

Joel Francois Jean ("Jean") respectfully moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in light of extraordinary and compelling reasons. Jean has already served 183 months of a 292-month sentence for a drug-trafficking conspiracy and firearm possession. During sentencing, Jean was designated a Career Offender based on prior Texas state substance abuse convictions. Because of that designation, Jean's Sentencing Guideline range was enhanced to 352–425 months. He was ultimately sentenced to 292 months—over 24 years. Of the five defendants convicted in connection with Jean's case, Jean received the longest sentence by far and is the ***sole*** person still incarcerated—due only to his Career Offender enhancement. But after Jean's sentencing, the Fifth Circuit held in *Tanksley* and *Hinkle* that Texas substance abuse convictions like Jean's do not qualify as "controlled substance offenses" under the Guidelines and do not support a Career Offender enhancement. If sentenced today, Jean's advised range would be 160–185 months, an over 50% reduction from the 352–425 months advised in 2009. Having served 183 months (15 years) in prison, where he has been a model inmate, Jean now seeks a sentence reduction to time served. The First Step Act authorizes Jean to seek relief directly with the Court.

## II.    BACKGROUND

### A.    Background of Jean's 292-month prison sentence imposed in 2009.

Jean's convictions stem from a 2007 drug bust involving 4 other defendants: █████ Gutierrez, █████ Lamar, █████ Mills, and █████ Watkins. Ex. 1: Presentence Investigation Report ("PIR") at 5–7. In August 2007, officers were investigating ████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ *Id.* at 5–6. ████████████████████████████████████████ ██████████████████ *Id.* at 6–7. ████████████████

1



. *Id.* at 6.

. *Id.* at 6.

*Id.* at 6–7.[1] Jean ultimately pleaded guilty to (1) conspiracy to possess with intent to distribute cocaine and (2) possession of a firearm in furtherance of a drug-trafficking offense in violation of 18 U.S.C. § 924(c). *Id.* at 5–9.

While Jean's co-defendants received prison sentences ranging from 46 to 120 months,[2] Jean's sentence was significantly longer—292 months—due to his classification as a Career Offender within the meaning of the U.S. Sentencing Guidelines ("USSG") § 4B1.1. That status was based on three prior Texas state substance abuse convictions under Texas Health and Safety Code § 481.112. *See* Ex. 1: PIR at 9. Without the Career Offender status, Jean's offense level would have been calculated at 26, resulting in a Guideline range of 180–210 months (120–150 months for the drug offense and 60 months for the firearm offense). *See* Ex. 3: 2008 Guidelines Manual at 396.[3] Instead, with the Career Offender enhancement, Jean's offense level was set at ▮ raising his Guideline range to 352–425 months (▮ months for the drug offense and ▮ months for the firearm offense). Ex. 1: PIR at 9, 18. Jean was ultimately sentenced to 292 months in prison (232 months for the drug offense and 60 months for the firearm offense). D.I. 54 at 2.

---

[1] ▮
▮ *See id.* at 7.
[2] *See* Ex. 2: Co-defendants' judgments showing their convictions and sentences.
[3] Under USSG Amendment 782 ("Drugs Minus Two"), Jean's offense level would have been calculated two points lower at 24, reducing the total Guideline range to 160–185 months.

To date, Jean has served 183 months. *See* Ex. 4: Sentence Computation at 3. He still has 109 months remaining, not counting Good Conduct Time ("GCT"). By contrast, all of Jean's co-defendants have been released—some over 10 years ago. Ex. 5: Co-defendants' BOP pages.

**B.     Significant changes in drug-sentencing laws since Jean's sentencing.**

Since Jean's sentencing, drug-sentencing laws have changed significantly. Between 2009 and 2013, some 40 states softened their drug laws, including lowering penalties. *See* https://www.pewresearch.org/fact-tank/2014/04/02/feds-may-be-rethinking-the-drug-war-but-states-have-been-leading-the-way. In the midst of those changes, Congress enacted the Fair Sentencing Act of 2010 "[t]o restore fairness to Federal cocaine sentencing." Public Law 111–220; 124 Stat. 2372. And in 2014, the Sentencing Commission promulgated Amendment 782 (the "Drugs Minus Two Amendment"), which revised the Guidelines to reduce by two levels the offense levels assigned to drug quantities. *See* https://www.ussc.gov/guidelines/amendment/782. The amendment therefore reduced the Guideline range for most drug-trafficking offenses.

Then, in 2018, President Trump signed the First Step (FSA) into law. With widespread support, the FSA opened many opportunities for people in federal prison, including authorizing federal inmates to move for compassionate release directly in district court. Prior to this change, the Bureau of Prisons ("BOP") retained sole gatekeeping authority over compassionate release petitions, resulting in underuse and mismanagement. *See U.S. v. Owen*, 2021 WL 3603598, at *1 & n.2 (E.D. Tex. Aug. 13, 2021). Through the FSA, Congress sought to mitigate this by "increasing the use and transparency of compassionate release." *Id.* (quoting Pub. L. 115-391, 132 Stat. 5194, 5239). President Trump announced at the 2019 State of the Union that "[t]he First Step Act gives nonviolent offenders the chance to reenter society as productive, law-abiding citizens. . . . America is a nation that believes in redemption." https://trumpwhitehouse.archives.gov/briefings-statements/remarks-president-trump-state-union-address-2. In a letter to the President, supporters

agreed that "[t]he sentencing reforms under consideration [in the FSA] [were] designed to ensure that each punishment fits the crime and that taxpayer dollars are not wasted locking up people who pose no threat to public safety." Ex. 6: Conservative Leaders' Letter to President Trump Expressing Support for FSA, at 161. That is precisely what Jean now requests—reduction of his sentence to properly fit his circumstances and the opportunity to reenter society a changed man.

Significant changes to drug sentencing also came from the courts. In 2016 and 2017, the Fifth Circuit issued its opinions in *Hinkle* and *Tanksley*, which held that prior Texas drug convictions no longer qualify as predicate "controlled substance offenses" supporting a Career Offender enhancement under USSG § 4B1.1. *See U.S. v. Tanksley*, 848 F.3d 347, 352 (5th Cir. 2017) (addressing § 481.112(a) conviction for possession with intent to deliver); *U.S. v. Hinkle*, 832 F.3d 569, 571 (5th Cir. 2016) (addressing § 481.112(a) conviction for delivery); *see also See U.S. v. Rodriguez-Castro*, 814 F. App'x 835, 837 (5th Cir. 2020), cert. denied, 141 S. Ct. 900 (2020) (citing to *Hinkle* and *Tanksley* in holding that "convictions under TEXAS HEALTH & SAFETY CODE § 481.112(a) are not 'controlled substance offense[s]' under U.S.S.G. § 4B1.1.").

## III.    ARGUMENT

This Court has authority under § 3582(c)(1)(A)(i) to grant Jean's request to reduce his sentence to time served. *U.S. v. Shkambi*, 993 F.3d 388, 390, 393 (5th Cir. 2021). To prevail, Jean must exhaust administrative remedies, show that extraordinary and compelling reasons warrant a reduction, show that compassionate release is consistent with any applicable policy statements from the U.S. Sentencing Commission, and convince the Court to exercise discretion to grant the motion after considering the § 3553(a) factors. *U.S. v. Cooper*, 996 F. 3d 283, 287 (5th Cir. 2021).

### A.    Jean has exhausted administrative remedies.

On October 11, 2022, Jean submitted a request to his Warden seeking a reduction in sentence under § 3582(c)(1)(A). *See* Ex. 7. More than 30 days have passed since his request was

received. *U.S. v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) (holding that once 30 days have lapsed from warden's receipt of the request, defendant may file motion irrespective of whether BOP has responded or administrative appeals are available). Jean has exhausted administrative remedies.

**B.    Extraordinary and compelling reasons support a sentence reduction.**

As this is a defendant-filed § 3582(c)(1)(A) motion, the Court is not limited to considering the categories of "extraordinary and compelling reasons" in the Sentencing Commission's policy statement and commentary. *See Shkambi*, 993 F.3d at 392–93 (holding USSG § 1B1.13 applies only to BOP's motions and does not bind district court addressing a defendant's motion). Rather, for defendant-filed motions, the Fifth Circuit leaves it to the district court to decide what factors, either alone or in conjunction with any other considerations, constitute extraordinary and compelling reasons. *Cooper*, 996 F.3d 283 at 289. Thus, this Court may consider additional reasons for reducing Jean's sentence, including but not limited to nonretroactive reduced penalties,[4] changes to the federal sentencing system narrowing what prior convictions can support a Career Offender enhancement,[5] the sheer length of the sentence imposed,[6] disparities between Jean's sentence and the average sentence for similar (or even more heinous) offenses,[7] sentencing disparities between Jean and his co-defendants,[8] the amount of time served,[9] and extraordinary degrees of rehabilitation combined with other factors.[10] As explained below, each exists here.

---

[4] *See e.g.*, *Cooper*, 996 F.3d at 288–89.

[5] *See, e.g.*, *U.S. v. Quinn*, 467 F. Supp. 3d 824, 827–28 (N.D. Cal. 2020); *U.S. v. Perry*, 2020 WL 7024915, at *4 (E.D. Mich. Nov. 30, 2020); *U.S. v. Hickman*, 2020 WL 6393391, at *4 (D. Md. Nov. 2, 2020); *U.S. v. Smith*, No. 14-cr-189 (D.D.C.), D.I. 76 at 3 (attached as Ex.8).

[6] *See, e.g.*, *U.S. v. Hudec*, 2022 WL 2118974, at *4 (S.D. Tex. June 9, 2022).

[7] *See, e.g.*, *U.S. v. Hebert*, 574 F. Supp. 3d 416, 422–23, 425 (E.D. Tex. Dec. 8, 2021); *U.S. v. Fowler*, 544 F.Supp.3d 764, 766 (N.D. Tex. Feb. 24, 2021); *U.S. v. Lyle*, 506 F. Supp. 3d 496, 502 (S.D. Tex. Dec. 9, 2020).

[8] *See, e.g.*, *Hickman*, 2020 WL 6393391, at *4.

[9] *See, e.g.*, *Hudec*, 2022 WL 2118974, at *4.

[10] *See, e.g.*, *Hebert*, 574 F. Supp. 3d at 422, 425; *Fowler*, 544 F. Supp. 3d at 766; *U.S. v. Cantu-Rivera*, 2019 WL 2578272, at *2 & n.2 (S.D. Tex. June 24, 2019).

1.    **Non-retroactive changes in sentencing law.**

(a)    **Jean does not qualify as a Career Offender under current law.**

After Jean pleaded guilty to the conspiracy drug offense and violation of § 924(c), the U.S. Probation Office prepared the PIR. Because Jean had prior Texas convictions for delivery of a controlled substance and possession with intent to deliver a controlled substance, the probation officer determined Jean was a "career offender" under USSG § 4B1.1. Ex. 1: PIR at 8–9, 18; *see also* Ex. 9: Texas drug offenses. That determination increased the offense level of Jean's conspiracy offense from 26 to ██,[11] catapulting the Guidelines range from 120–150 months to ████ months. The Court sentenced Jean to 232 months for the conspiracy drug offense, reflecting a small downward adjustment to address "excessive disparity," although noting its hands were tied due to the Career Offender statute. *See* Ex. 10: Sentencing Hr'g Tr. 24:1–15, 25:2–6.

But the Fifth Circuit has since held that Jean's prior Texas drug convictions no longer qualify as predicate "controlled substance offenses" supporting a Career Offender enhancement. *See U.S. v. Rodriguez-Castro*, 814 F. App'x at 837; *Tanksley*, 848 F.3d at 352; *Hinkle*, 832 F.3d at 571. Thus, if sentenced today, Jean's sentence would not be enhanced as a Career Offender and the Guideline range for his drug offense would have been no higher than 120–150 months.

The Eastern District has held that "courts examine any changes in law and the sentencing guidelines when determining whether a sentence is extraordinary." *Hebert*, 574 F. Supp. 3d at 422. Courts nationwide have found extraordinary and compelling reasons for sentence reduction under these ***exact*** circumstances. *See, e.g., U.S. v. Reyes*, 2021 WL 5909849, at *3–5 (W.D.N.C. Dec. 12, 2021) (reducing 260-month sentence for drug conspiracy and § 924(c) violation to time served (193 months) for improper Career Offender enhancement); *Smith*, Ex. 8 at 3 (holding change in

---

[11]    These figures include a ████████████████████. Ex. 1: PIR at 8.

law regarding predicate offenses for Career Offender status "is itself an extraordinary and compelling reason to reduce [defendant's] sentence"); *Quinn*, 467 F. Supp. 3d at 828, 831 (reducing sentence to time served after improper Career Offender enhancement); *Hickman*, 2020 WL 6393391, at *4–5 (same); *Perry*, 2020 WL 7024915, at *4, *6 (same). The fact Jean would not be a Career Offender today is an extraordinary and compelling reason warranting a reduction.

### (b)    Jean would also be eligible for the "Drugs Minus Two" reduction.

Under the Drugs Minus Two Amendment, Jean's original offense level of 26 would have been reduced to 24, thereby reducing the Guideline range for his drug offense from 120–150 months to 100–125 months. In 2015, Jean moved to apply this reduction retroactively to his sentence, but his request was denied because his Career Offender status made him ineligible for the reduction. *See* D.I. 84; D.I. 85. Jean was thus left with his 232-month sentence, roughly *double* what the Sentencing Commission would now deem appropriate for Jean's drug offense.

In light of these post-conviction changes to federal sentencing, Jean now finds himself in a state of sentencing purgatory: having served 183 months in prison, Jean has already completed a sentence the Fifth Circuit and Sentencing Commission would today consider sufficient and proportionate to his misconduct, yet he faces *another 9 years* behind bars because these policy adjustments came too late and were not made categorically retroactive. Jean's prior inability to reap the "Drugs Minus Two" reduction due to his improper Career Offender status further establishes extraordinary and compelling reasons warranting a sentence reduction.

### 2.    The sheer length of Jean's sentence highlights extraordinary disparities.

Now that today's sentencing scheme no longer warrants a Career Offender enhancement for someone like Jean, the sheer length of the sentence it produced is extraordinary and disparate.

### (a)    Jean received a harsher sentence than his co-defendants.

Courts consider sentence disparities between movants and their co-defendants in granting

compassionate release. *See Hickman*, 2020 WL 6393391, at *4 (noting defendant was indicted for a drug-trafficking conspiracy along with two co-defendants who received much shorter sentences because they were not career offenders). Here, because of his Career Offender status, Jean received a much longer sentence than each of his co-defendants, as shown in the summary table in Exhibit 11. For example, although Jean and Gutierrez were convicted of the same two counts, Jean's total sentence was ***more than double*** Gutierrez's. Similarly, Jean and Lamar were both in criminal history category VI, but Lamar was not deemed a Career Offender and received an 87-month sentence for his drug-trafficking conviction, one third of Jean's 232 months. The disparity is particularly striking given ████████████████████████████████████████

████████████████████████████████████. *See* Ex. 1: PIR at 6.

During sentencing, the Court was "trouble[d]" by the disparities and recognized that Jean's Career Offender status caused his significantly longer imprisonment, noting "Gutierrez got 120 months . . . [b]ased on his plea of guilty to the drug violation and the firearm violation," while "Jean is facing something like three times that ***based on the career offender statutes***." Ex. 10: Sentencing Hr'g Tr. at 22:25–23:25 (emphasis added). The Court recognized the "excessive disparity" and found that "some adjustment [was] justified," but expressly noted that downward adjustment would be limited due to Jean's Career Offender status and Congress's intent at the time of imposing strict sentences. *Id.* at 24:7–15. This Court is not so constrained.

### (b) Jean received a harsher sentence than the average Texas defendant sentenced for the same crime with the same criminal history category.

In *Hebert*, the Eastern District held that "[c]ourts can consider the disparity between the defendant's sentence and the sentence imposed on average for similar offenses." 574 F. Supp. 3d at 422–23. Setting aside Jean's firearm offense, the 232-month sentence he received for his drug offense far exceeds the sentence he would likely receive today. Between 2015–2021, the median

sentence imposed by Texas district courts for cocaine-related drug trafficking was 151 months for defendants in sentencing zone D, with criminal history category VI, and **with** a Career Offender status. *See* Ex. 12: Sentence length data from Sentencing Commission Interactive Data Analyzer, available at https://ida.ussc.gov/analytics. Significantly, the median sentence was only 87 months for defendants in zone D and category VI but who (like Jean today) do not qualify as Career Offenders. *See id.* Thus, if Jean were sentenced today for the same drug-trafficking crime, with the same criminal history category VI, but **without** the Career Offender status, his drug trafficking sentence would have likely been **years** shorter; indeed, Jean may have been released by now.

Without downplaying Jean's 2007 conduct, it is unnecessarily cruel to let him languish in prison for years to come. Indeed, his time served **exceeds** the punishment Congress, the Sentencing Commission, and Texas district courts now consider adequate. *See Quinn*, 467 F. Supp. 3d at 828.

> **(c)** **Jean received a harsher sentence than defendants convicted of more heinous offenses.**

This District has found that gross sentencing disparities compared to other violent crimes can weigh in favor of extraordinary and compelling circumstances. *See Hebert*, 574 F. Supp. 3d at 425. Jean's 292-month term dwarfs the median sentences imposed for even the most heinous crimes. For instance, in 2021, the median sentence for murder was 231 months, sexual abuse was 180 months, kidnapping was 123 months, child pornography was 90 months, and manslaughter was 59 months. *See* Ex. 13: 2021 Federal Sentencing Statistics at 64 (Table 15). This disparity further warrants a sentence reduction. *Fowler*, 544 F. Supp. 3d at 766 (granting compassionate release and noting the average sentence in Texas for murder was less than half of defendant's sentence for robbery); *U.S. v. Cabrera*, 2022 WL 93614, at *5 (E.D. La. Jan. 10, 2022) (sentencing disparity extraordinary and compelling grounds for sentence reduction); *U.S. v. Baker*, 2020 WL 4696594, at *3 (E.D. Mich. Aug. 13, 2020); *Quinn*, 467 F. Supp. 3d at 828.

9

### 3.      The length of time already served supports Jean's compassionate release.

Jean has spent 183 months—over 15 years—in prison. Counting GCT, Jean has served the equivalent of 209 months, or over 71% of his 292-month sentence. *See* Ex. 4 at 3. If Jean had been sentenced at the high end of today's Guideline range (185 months), he would have served nearly 113% with GCT and already discharged the sentence. Releasing him on time served would allow the Court to maintain respect for current sentencing law and account for the entire span of Jean's advisory sentencing range under today's Guidelines.

### 4.      Jean's post-sentencing conduct and rehabilitation support a conclusion that extraordinary and compelling reasons exist to release him on time served.

This District recognizes rehabilitation "can be a significant factor warranting a sentence reduction when an inmate has an otherwise qualifying condition." *Owen*, 2021 WL 3603598, at *3; *see Cantu-Rivera*, 2019 WL 2578272, at *2 & n.2 ("The Court considers his rehabilitation in combination with the other factors to constitute, in their entirety, such extraordinary and compelling reasons."). Jean's extensive post-sentencing rehabilitation (*see* Section III.C.2), when combined with the other reasons above, further supports release. "If an inmate demonstrates a long, comprehensive record of rehabilitation, the question becomes whether injustice would occur if the person remains incarcerated." *Hebert*, 574 F. Supp. 3d at 422. Here, the answer is yes.

## C.      The sentencing factors in 18 U.S.C. § 3553(a) support compassionate release.

Each factor in 18 U.S.C. § 3553(a) weighs in favor of a reduction to time served, which is "sufficient, but not greater than necessary," to accomplish the goals of sentencing.

### 1.      Nature, circumstances of offense; need to reflect seriousness of offense, promote respect for the law, just punishment [§ 3553(a)(1), (a)(2)(A)]

Jean does not attempt to diminish the seriousness of his two offenses. Instead, this Motion is primarily based on changes to the law that remove his Career Offender enhancement and would result in a far lower sentence today. Reducing his sentence to time served still represents a

substantial punishment of 15 years in prison, which appropriately reflects the seriousness of the offenses and provides just punishment. *U.S. v. Decator*, 452 F. Supp. 3d 320, 326 (D. Md. 2020) (finding factors (a)(1) and (a)(2)(A) adequately addressed by time served).

2.    **History and characteristics of the defendant [§ 3553(a)(1)]**

The Supreme Court has stated that "evidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors," including (a)(1) and (a)(2). *Pepper v. U.S.*, 562 U.S. 476, 491 (2011). "Postsentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary' to comply with the sentencing purposes set forth in § 3553(a)(2)." *Id.*

First, during his 15 years in prison, Jean has dedicated significant time to bettering himself through extensive work and education endeavors. He spent over 10 years working for UNICOR, developing valuable skills in manufacturing and business administration. His maturity and work ethic set him apart from the other prisoners. Jean earned the praise of his UNICOR supervisors (each with over 20 years of experience in corrections) for his extraordinary commitment to bettering himself (a quality "very rarely" seen), and for his "tenacity, dedication, and unequivocal focus." Exs. 14 & 15. Jean left UNICOR to further his experience and knowledge in his specialty field of Heating, Ventilation, and Air Conditioning ("HVAC"). He now serves in Facilities as the inmate HVAC technician for Beaumont Low to obtain hands-on application of his HVAC skills and training. Jean Decl. ¶ 15. Having earned his Associate's degree with honors in HVAC, Jean has continued his education while incarcerated. Jean Decl. ¶¶ 16–17; Exs. 16–18. To date, he has completed 3,654 hours of education across 25 programs, including 1,918 hours in HVAC, and another 1,280 hours in complementary areas of electricity, plumbing, welding, and construction. Jean Decl. ¶ 17; Ex. 19. He is currently undertaking a lengthy HVAC apprenticeship, where he is gaining knowledge and certifications that will benefit him outside prison. Jean Decl. ¶ 15. He is

also learning Spanish (95 education hours so far) to improve his employability following his release. *Id.* ¶ 17. After reentering society, Jean plans to enter the HVAC field and aspires to open his own HVAC business. *Id.* ¶ 18. He believes his work experience and education over the past 15 years will make him employable, and he has already been offered a job upon release. *Id.*; Ex. 20.

Second, throughout his time served, Jean has maintained close relationships with family, including his mother, son, and brother. Jean Decl. ¶ 19. All submit strong letters of support for his compassionate release. *See* Exs. 21–23 (discussing Jean's emotional and spiritual growth, his family's love, and Jean's desires to take care of family once freed). Friends outside of Jean's family also recognize his growth and show their support. *See* Ex. 20 (letter from A. Thibodeaux-Paris, who considers Jean her "Uncle Joel"), Ex. 24 (letter from J. Powell, a fellow inmate describing Jean as a role model for other inmates). Jean's friends and family will provide a stable support system for him upon release, including housing and potential employment. *See* Exs. 20–23.

Third, Jean has been a model inmate. His disciplinary record reveals only two incident reports, both of which are low level ("being absent from assignment") and over 8 years old. Ex. 25. Jean acknowledges his criminal history shows one isolated act of violence (a misdemeanor assault) from 2002. Jean Decl. ¶ 22. Jean took responsibility (indeed, he pled guilty and was sentenced to 90 days in jail) and regrets his actions. *Id*. Importantly, Jean has not been involved in ***any*** acts of violence in 20 years. *Id*. Further, he has steadily decreased his recidivism score, maximizing the point reductions he can earn through drug treatment, programming, and work programs. Jean Decl. ¶ 26. His last PATTERN assessment from May 2022 shows his current General Score is 43 and Violent Score is 25. Ex. 26. But that assessment has not yet been updated to reflect the removal of erroneous "escape" points. Jean Decl. ¶¶ 27–29. Jean recently petitioned the BOP to remove the "escape" from his Custody Classification Form (Ex. 27) but must wait until

he is reassessed in 2023 to see that correction reflected in his PATTERN score. *Id.* Without the "escape" points, Jean's General Score would be 40 (one point from "Low") and Violent Score would be 23 ("Low"). *See* Male Cut Points, https://www.bop.gov/inmates/fsa/pattern.jsp.

Significant rehabilitation like Jean's weighs in favor of reducing his sentence. *See U.S. v. Brown*, 457 F. Supp. 3d 691, 694, 704 (S.D. Iowa 2020) (factor (a)(1) "cut strongly in favor of release" where defendant had support letters and thousands of hours in education programs); *Decator*, 452 F. Supp. 3d at 325–26 (factor (a)(1) favored release where defendant had "minimal, non-violent disciplinary record" and family and friends willing to support him upon release); *U.S. v. Perez*, 2020 WL 1180719, at *3 (D. Kan. Mar. 11, 2020) (rehabilitation favored release where inmate "gained his GED while in prison and has availed himself to various educational programs").

### 3.    The need to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant [§ 3553(a)(2)(B), (a)(2)(C)]

Jean's extensive rehabilitation in prison over the past 15 years and his plan for re-entry confirm these factors will be satisfied by reduction to time served. Jean has worked his way down from initial placement at a high-security USP compound (Big Sandy) to a low-security compound (FCI Beaumont Low). He has consistently reduced his PATTERN recidivism score, now bordering on "Low." *See supra* § III.C.2. This, along with his minimal and non-violent disciplinary record, shows the public will be adequately protected through Jean's immediate release to 8 years of community supervision. *See infra* § III.D; Ex. 25 at 1. As part of Jean's re-entry plan, if granted release, he will initially reside with his mother. Ex. 21 at 2. He has a job offer through a friend. Ex 20 at 1. Further, his experience and education in HVAC render him eminently employable. By maintaining and forging connections throughout his prison term, Jean has a network of support, including his son (Ex. 22), his mother (Ex. 21), brother (Ex. 23), and friend (Ex. 20). Such support means Jean will be accountable as he navigates his way back into society.

### 4. The need to provide defendant educational or vocational training, medical care, or other correctional treatment [§ 3553(a)(2)(D)]

As shown throughout this Motion, Jean has completed thousands of hours of educational programming and has a job offer upon release. Ex. 19 at 1; Ex. 20 at 1. His training and experience in HVAC will serve him well in securing employment upon release. Jean's best opportunities await him outside prison, where he can use the knowledge and skills he has acquired. Further, Jean's motion is not founded on medical issues, nor has he required regular medical care in prison.

### 5. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct [§ 3553(a)(6)]

As outlined above, when sentenced, the Court gave Jean a downward adjustment to try to avoid an "excessive disparity," and decided on an adjustment of 60 months *after* taking into account Jean's Career Offender status which meant the adjustment was "not going to be great." Ex. 10: Sentencing Hr'g Tr. at 24:7–15; Ex. 28 (Statement of Reasons) at 3 (███████████████████ █████████████████████). Today, Jean's prior convictions no longer warrant Career Offender status, and the Guidelines would advise a sentence half as long (160–185 months)— which he has already served. Notably, a sentence of 160–185 months would still result in disparities among his co-defendants. For example, Mr. Lamar also had a Category VI offender level but with no Career Offender status, and was given a sentence of 87 months. *See* Ex. 11. Allowing Jean to continue his current 292-month sentence would be unjustifiably disparate.

In sum, each of the above factors supports a reduction in sentence to time served.[12]

### D. Compassionate release poses no danger to society under 18 U.S.C. § 3142(g).[13]

Jean has consistently reduced his recidivism risk, as well as his custody level and security

---

[12] ███████████████████████████████████████████████████
Ex. 1: PIR at 19.

[13] Jean maintains USSG § 1B1.13 does not apply to his defendant-filed motion for compassionate release, *see Shkambi*, 993 F.3d at 392–93, but nonetheless addresses this factor.

score. Apart from a misdemeanor assault over 20 years ago, Jean has not been involved in *any* violent acts. He has never threatened anyone with a weapon or used a firearm in furtherance of a crime of violence. Jean Decl. ¶ 22. Indeed, Jean's record and reputation over the last 15 years demonstrates he is nonviolent and poses no danger to society. Moreover, he will be with his family upon release, who have pledged to hold him accountable in order to help him transition. *See* § III.C.2. He will also have 8 years of supervised release, which courts have found mitigates any dangers associated with a sentence reduction. *U.S. v. Marks*, 455 F. Supp. 3d 17, 35 (W.D.N.Y. 2020); *also U.S. v. Williams*, 2020 WL 1751545, at *3 (N.D. Fla. Apr. 1, 2020) ("[T]he risk of [the defendant] engaging in further criminal conduct is minimal and can be managed through . . . the terms of his supervised release."). His commitment to self-improvement shown by his extensive education and work history, as well as his non-violent record in prison provide further evidence Jean is no danger to society. *See U.S. v. Redd*, 444 F.Supp.3d 717, 729–30 (E.D. Va. 2020) (finding defendant was no danger to society where "his conduct during his more than 20 years in prison is overwhelmingly positive and reflective of substantial rehabilitation," had "demonstrated a commitment to self-improvement, devoting hundreds of hours to vocational programs," and submitted letters from family attesting to support upon release).

In short, Jean is not the same man who entered prison so long ago, as confirmed by his in-prison record and support letters from loved ones, supervisors, and a fellow inmate. Exs. 19–25. He has no interest in the criminal lifestyle that took so much from him, and respectfully asks the Court to allow him an opportunity to embark on a productive life in society. Jean Decl. ¶ 34.

## IV.  CONCLUSION

In light of the foregoing, this Court should reduce Jean's sentence to time served. Jean requests a hearing so that his counsel can answer any questions the Court may have about the bases for his compassionate release.

Dated: January 17, 2023                    Respectfully submitted,

                                           */s/ Jeanne M. Heffernan*
                                           Jeanne M. Heffernan
                                              State Bar No. 24128395
                                              jheffernan@kirkland.com
                                           Nadia E. Haghighatian
                                              State Bar No. 24087652
                                              nadia.haghighatian@kirkland.com
                                           KIRKLAND & ELLIS LLP
                                           401 Congress Avenue
                                           Austin, TX 78701
                                           Tel: (512) 678-9100

                                           *Attorneys for Joel Francois Jean*


## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on January 17, 2023, with a copy of this document and all accompanying attachments and exhibits via email.

                                           */s/ Jeanne M. Heffernan*
                                           Jeanne M. Heffernan


## CERTIFICATE OF CONFERENCE

I certify that on January 5, 2023, counsel for Joel Francois Jean conferred with Assistant U.S. Attorney John B. Ross, who indicated that the Government is opposed to the relief requested in this Motion.

                                           */s/ Jeanne M. Heffernan*
                                           Jeanne M. Heffernan