IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| v. | § | CASE NO. 1:08-CR-00101-MJT-1 |
| | § | JUDGE MICHAEL J. TRUNCALE |
| JOEL FRANCOIS JEAN | § | |

## ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

Before the Court is Defendant Joel Francois Jean's Amended Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [Dkt. 92]. On October 1, 2009, the Court sentenced Mr. Jean to 292 months imprisonment for Conspiracy to Possess With Intent to Distribute 500 Grams or More But Less Than 5 Kilograms of Cocaine in violation of 21 U.S.C. § 846 and Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1). [Dkt. 54]. He now asks the Court to reduce his sentence to time served. On March 15, 2023, the Court held a hearing on his Motion. Because the First Step Act authorizes courts to grant "compassionate release" where, as here, (1) extraordinary and compelling reasons warrant such a reduction, and (2) such a reduction is consistent with the sentencing factors, the Court grants Mr. Jean's Motion.

### I.     LEGAL STANDARD

18 U.S.C. § 3582(c)(1)(A) "authorize[s] a sentence reduction where: (1) 'extraordinary and compelling reasons warrant such a reduction,' (2) 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission,' and (3) such a reduction is appropriate 'after considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *United States v. Shkambi*, 993 F.3d 388, 389 (5th Cir. 2021) (quoting 18 U.S.C. § 3582(c)). Before seeking relief from the Court, a defendant must submit a request to his facility's warden to move for

compassionate release on his behalf and then either exhaust his administrative remedies or wait 30 days from the warden's receipt of his request. 18 U.S.C. § 3582(c)(1)(A); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 920 (2020).

Section 3582(c)(1)(A) does not define the "extraordinary and compelling reasons" that may merit compassionate release. Courts therefore looks to the phrase's plain and ordinary meaning. "Extraordinary" means "'beyond or out of the common order,' 'remarkable,' and synonymous with 'singular.'" *United States v. Escajeda*, 58 F.4th 184, 188 (5th Cir. 2023) (quoting *Extraordinary*, Webster's New International Dictionary 903 (2d. ed. 1934; 1950)). "'Compelling' is a participle of 'compel,' which means 'to drive or urge with force, or irresistibly,' 'to force,' and 'to subjugate.'" *Id.* (quoting *Compel*, Webster's New International Dictionary, *supra*, at 544). Section 3582(c)(1)'s use of these terms together thus limits compassionate release to instances where prisoners "face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner." *Id.* (citing *Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020)); *see also United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (considering a condition that roughly 12% of Americans suffer from "commonplace" and not "extraordinary").

The Sentencing Commission has the authority, however, to "promulgate general policy statements . . . that describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *United States v. Williams*, No. 3:18-CR-0291-B-2, 2021 WL 1865005, at *2 (N.D. Tex. May 10, 2021) (quoting *Shkambi*, 993 F.3d at 391). Prior to the passage of the First Step Act, the Sentencing Commission issued a policy statement, U.S.S.G. § 1B1.13, "set[ting] forth three circumstances that are considered 'extraordinary and compelling reasons.'" *Id.* (citing *United States v. Muniz*, NO. 4:09-CR-0199-1, 2020 WL 1540325, at *1 (S.D. Tex. Mar. 30, 2020) (citing § 1B1.13(1)(A), cmt. n.1)). These include the defendant's medical condition, age, and family situation. *See* § 1B1.13(1)(A), cmt. n.1.4. But

Section 1B1.13 only applies to motions filed by "the Director of the [BOP]" and does not bind district courts when addressing prisoners' motions. *See Shkambi*, 993 F.3d at 393 (citing § 1B1.13). Therefore, "there are no policy statements applicable to prisoners' compassionate-release motions." *United States v. Escajeda*, 58 F.4th 184, 188 (5th Cir. 2023) (citing *Shkambi*, 993 F.3d at 392).

## II. DISCUSSION

Mr. Jean submitted a request to the FCI Beaumont Low warden to move for compassionate release on his behalf, and over thirty days have passed since the warden received the request. [Dkt. 92–9 at 2–3]. The Court therefore moves directly into a merits analysis. Because there are no policy statements applicable to prisoners' compassionate-release motions, the Court only addresses: (1) whether extraordinary and compelling reasons warrant reducing Mr. Jean's sentence to time served; and (2) whether reducing Mr. Jean's sentence to time served is appropriate after considering the factors ser forth in section 3553(a), to the extent that they are applicable.

### A. Extraordinary and Compelling Reasons

Mr. Jean provides several bases that he considers extraordinary and compelling reasons warranting compassionate release. The Court considers each in turn.

#### 1. Non-Retroactive Changes in Sentencing Law

Fifth Circuit law at the time of Mr. Jean's sentencing classified him as a "career offender" because of his prior convictions in violation of Tex. Health & Safety Code Ann. § 481.112 for delivery of a controlled substance and possession with intent to deliver a controlled substance. *See* [Dkt. 52 at 9]. After a two-level reduction for acceptance of responsibility, the career offender determination increased Mr. Jean's offense level from 26 to 35. *Id.*

Section 4B1.1 of the Sentencing Guidelines provides:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled

substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). Almost seven years after Mr. Jean's sentencing, the Fifth Circuit issued *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016). In *Hinkle*, interpreting the Supreme Court's then recent opinion in *United States v. Mathis*, 579 U.S. 500 (2016), the Fifth Circuit held that a prior conviction under Tex. Health & Safety Code Ann. § 481.112(a) for knowingly delivering a controlled substance is not a "controlled substance offense" within the meaning of the Sentencing Guidelines, and therefore cannot provide the basis of a career-offender enhancement. 832 F.3d at 571. Likewise, in *United States v. Tanksley*, the Fifth Circuit held that a conviction under Tex. Health & Safety Code Ann. § 481.112 for possession with intent to deliver a controlled substance "does not qualify as a controlled substance offense under the Guidelines." 848 F.3d 347, 352 (5th Cir. 2017).

If Mr. Jean were sentenced in today's post-*Hinkle* and *Tanksley* world, for the exact same conduct, he would not be sentenced as a career offender, and would have an offense level of 26. Additionally, without the career offender adjustment, he would be eligible for the "minus 2" reduction under U.S.S.G. Amendment 782, for a total offense level of 24. As a result, under the guidelines, Mr. Jean would be sentenced today to 100–125 months for the drug offense and 60 months for the firearm offense, to run consecutively, for a total of 160-185 months.

"A non-retroactive change in the law regarding sentencing is not unusual." *United States v. Elam*, No. 6:11-cr-00042-JDK-JDL, at 7 (E.D. Tex. June 3, 2022). Nor is it unique to the life of the prisoner; it affects all prisoners sentenced under the prior law. *Id.* at 8. But non-retroactive changes in sentencing law may constitute extraordinary and compelling reasons warranting compassionate release when other factors, such as the defendant's rehabilitation, are also present.

4

*See United States v. Hebert*, 574 F. Supp. 3d 416, 426 (E.D. Tex. 2021). The non-retroactive changes in the law regarding sentencing may favor granting Mr. Jean's Motion.

### 2. Sentencing Disparities

Mr. Jean brings to the Court's attention that he received a harsher sentence than his co-defendants, the average Texas defendant sentenced for the same crime with the same criminal history category, and defendants convicted of "more heinous" offenses. [Dkt. 92 at 13–15]. "[T]he need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," is a factor that courts shall consider in determining the particular sentence to be imposed. 18 U.S.C. § 3553(a)(6). Indeed, when sentencing Mr. Jean, the Court already considered the disparity between Mr. Jean's recommended sentence, and the sentences that his co-defendants had already received. *See* [Dkt. 71 at 25:12–19] (issuing Mr. Jean a sentence "outside of the advisory guidelines, based on Factor 6 to avoid unwarranted sentence disparities with the other individuals involved, taking into consideration many of them have a . . . criminal history that's lower than Mr. Jean's").

There are numerous reasons why defendants may receive different sentences for seemingly similar offenses: here, Mr. Jean was the only career offender involved and all but one of his co-defendants had a low criminal history. *Id.* at 23:4–9. Plus, as the Court told Mr. Jean during his sentencing:

> [P]art of all this comes down to the choices defendants make when they are first arrested as to whether they are going to plead and cooperate to accept responsibility or not. And it's just a fact of life that certain defendants will wind up getting plea agreements through the system because they immediately accept responsibility and cooperate.

*Id.* at 23:10–16. Mr. Jean, on the other hand, entered his guilty plea the day that his trial was set to begin. *See* [Dkts. 27; 36]. Finally, Mr. Jean and his co-defendants played very different roles in the criminal scheme. According to the Factual Basis that Mr. Jean stipulated to when entering his

guilty plea, Mr. Jean controlled an operation out of an apartment in Texas, where he sold illegal narcotics to his co-defendants, pursuant to an agreement between Mr. Jean and his co-defendants. [Dkt. 37 at 7–8]. The Court does not agree that these sentencing disparities are extraordinary and compelling reasons for compassionate release.

### 3. Post-Sentencing Conduct and Rehabilitation

The Court affords significant weight to two letters that it received from BOP officials in support of Mr. Jean's release. The first letter is from a manager with over twenty years of experience at the BOP. In relevant part, his letter provides:

> During my tenure in managerial roles within FPI UNICOR Beaumont, inmate Joel Jean #98523-179, has represented himself to be a valuable, trustworthy and indispensable asset. . . . Inmate Jean is a true testament of an individual, whom has educated not only himself, but many of his peers, as he prepares for re-entry back into society. . . . **I have over 20 years of experience within the Federal Bureau of Prisons and very rarely have I come across an inmate that has truly worked on himself from the day of his admittance in the custody of the Bureau of Prisons, at bettering himself, for an eventual successful return into society.** Due to the continuing education inmate Jean has obtained and continues to pursue, relative to his entrance back into society I am of the opinion, that inmate Jean has not only accepted responsibility for his actions, but chance afforded him, through compassionate release. Inmate Jean deserves an opportunity to prove himself once again, that he can and will be a productive member of society by mentoring those less fortunate, who may continue to fail and have no hope of a bright future. I applaud his continuing efforts to be a better man, an individual whom has learned from his mistakes and move forward, with no regrets and never once blaming others for his choices in life, but accepting full responsibility for his actions.

[Dkt. 92-16 at 2] (emphasis added). The second letter is from a supervisor with over two decades of corrections experience at the state and federal level. In relevant part, his letter provides:

> Throughout my career in corrections and subsequently in FPI UNICOR Beaumont, inmate Joel Jean #98523-179, stands out within his administrative role as an individual whose level of knowledge and expertise has led him to become a consistent and indispensable employee. Inmate Jean is counted upon to perform advanced business equations, statistical and problem solving techniques with a high degree of precision that is vital to maintaining our forty-nine (49) million dollar Department of Defense contract here at FPI UNICOR Beaumont. . . . Inmate Jean approaches his assignments with tenacity, dedication and unequivocal focus . . . Witnessing inmate Jean tackle challenge after challenge until a successful result is

achieved is one of the rare qualities I have seen inmate Jean demonstrate time and again in the face of adversity. . . **I am of the opinion and would solemnly affirm that inmate Jean is one of those rare individuals who have accepted responsibility for his actions, but chance afforded him, through compassionate release would continue his pursuit of excellence as contributing member of society**. . . . **[I]nmate Jean could become a vital spokesmen and shining example to thwart recidivism**.

[Dkt. 92-17 at 2] (emphasis added). The Court has never received such sincere and compelling letters encouraging an inmate's release from such trusted, experienced, and impartial people of authority. Indeed, the letters both describe Mr. Jean's characteristics and rehabilitation as rare.

At the hearing on March 15, 2023, Mr. Jean told the Court:

> [A]fter a 292-month sentence and almost 16 years of incarceration and self-diagnosing myself, I came to the conclusion that I wanted to change. So I did everything in those 16 years to accomplish that. But to me, I can honestly say that I am never ever coming back to prison ever again. But to me, it's more than just not returning to prison. To me, it's more about what I'm going to -- what am I going to do with my life once I get out of prison. And I know I have the skills, the character, integrity, the wisdom, the knowledge, the work ethics to be successful when I get out of prison.
>
> But, again, to me, it's more than just not coming back to prison or being successful. To me, the more important question is being an asset to my community, a contributor to society. To be the best man I can be, to do the right things. It's about caring. More importantly, it's about love. You know, true love. You strive to be the best husband, father, son, best human being, the best man you can possibly be. So I know I've made mistakes in my life, but believe me when I tell you, your Honor, I've learned from my mistakes. The last 15 years of my life can attest to all of the things I've done to try to correct those mistakes and to be a better person and to prepare myself because I know one day, whether it's today or tomorrow, I'm going to get out of prison. And I have to get out there, and I have be the glue for my family and a father to my son. A support mechanism for my elderly 80-year-old mother. You know, my grandkids. So I know love is the factor that is going to let me be the man I truly was meant to be.
>
> So all I could do is ask you for this opportunity. I won't need another one, I promise you that.

[Dkt. 111 at 28–30]. When making this plea, Mr. Jean exuded a level of sincerity that his words on paper cannot possibly convey, and that the Court has never before witnessed from a criminal

7

defendant. The term "rare" does not give Mr. Jean's rehabilitation and renewed outlook on life justice—it is wholly extraordinary.

"[W]hile rehabilitation alone is not an 'extraordinary and compelling' reason for a sentence reduction, it can be a significant factor warranting a sentence reduction when an inmate has an otherwise qualifying condition." *Hebert*, 574 F. Supp. 3d at 422. "If an inmate demonstrates a long, comprehensive record of rehabilitation, the question becomes whether injustice would occur if the person remains incarcerated." *Id.* While neither are sufficient on their own, Mr. Jean's long, comprehensive record of rehabilitation and the non-retroactive changes in the sentencing law together constitute compelling and extraordinary reasons warranting compassionate release.

\* \* \*

The Government cites the Fifth Circuit's recent decision, *United States v. Escajeda*, 58 F.4th 184 (5th Cir. 2023), for the premise that "a prisoner cannot use § 3582(c) to challenge the legality or *duration* of his sentence." [Dkt. 108 at 1] (quoting *Escajeda*, 58 F.4th at 187) (emphasis added by the Government). This rule is not relevant in this case, however. In *Escajeda*, the prisoner sought compassionate release because "his sentence exceeded the statutory maximum and that he received ineffective assistance of counsel." 58 F.4th at 187. The Fifth Circuit affirmed denial of the prisoner's motion because those "claims are the province of direct appeal or a [habeas corpus] motion, not a compassionate release motion." *Id.* Unlike the prisoner in *Escajeda*, Mr. Jean does not argue that his confinement is unlawful; he argues that extraordinary and compelling reasons warrant a reduction of his otherwise lawful sentence. *See* [Dkt. 110 at 5] ("Jean is not challenging the legality of his original sentence or its duration. To the contrary . . . Jean concedes his sentence was **not** unlawful."). Indeed, as Mr. Jean's counsel points out: "By definition, **all** compassionate

release motions seek to modify the duration of a sentence; that is the very purpose of the statute." *Id.* Adopting the Government's interpretation of *Escajeda* would nullify section 3582(c).

**B. Section 3553(a) Factors**

18 U.S.C. § 3553(a) provides factors that courts consider when determining a particular sentence. Granting Mr. Jean's Motion is consistent with these factors. Mr. Jean has already served a longer sentence than a defendant would receive today for the same conduct. Therefore, his sentence served reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, and affords adequate deterrence to criminal conduct. 18 U.S.C. § 3553(a)(2)(A)–(B). Requiring him to complete his original sentence would result in unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See id.* § 3553(a)(6).

Mr. Jean's PATTERN general recidivism score provided by the BOP is 40—just one point shy of the "low risk" category. *See* [Dkt. 115-2 at 2]; *Pattern Risk Assessment*, Federal Bureau of Prisons, https://www.bop.gov/inmates/fsa/pattern.jsp (last visited May 30, 2023). And the BOP categorizes him as low risk for violent recidivism. *Id.* Indeed, his prison disciplinary record is minimal and non-violent. *See* [Dkt. 92-27] (documenting only two disciplinary incidents, both absences from assignments, one in 2013 and one in 2014). Continued incarceration of Mr. Jean is not necessary to protect the public. *See* 18 U.S.C. § 3553(a)(2)(C).

Continued incarceration is also not necessary to provide Mr. Jean with needed educational or vocational training, medical care, or other corrective treatment in the most effective manner. *See id.* § 3553(a)(2)(D). While in prison, Mr. Jean has received substantial and effective educational and vocational training, which will allow him to succeed outside of prison. He completed courses in keyboarding, strategic thinking, Spanish, real estate, carpentry, trade math, plumbing, electric, and major appliance service technology, among others. [Dkt. 92-20]. A letter

that the Court received from Mr. Jean's family friend, who refers to him as "Uncle Joel," substantiates the Court's belief that Mr. Jean will be able to succeed outside of prison. [Dkt. 92-22]. She writes: "l work in real estate and have discussed with a contact of mine my Uncle, and his situation and they are willing to give him a chance upon his release. He has promising opportunities waiting on him." *Id.* at 2. She also pledges to provide him with all the emotional, spiritual, and financial support that he needs upon his release. *Id.* Mr. Jean's mother also informed the Court that she has a room ready for him to live in at her house. [Dkt. 92-23 at 3].

Granting Mr. Jean's Motion is consistent with the relevant sentencing factors provided by 18 U.S.C. § 3553(a).

### III. CONCLUSION

It is therefore **ORDERED** that Defendant Joel Francois Jean's Amended Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Dkt. 92] is **GRANTED**. The Court will enter an amended judgment of conviction consistent with this Order.

**SIGNED this 30th day of May, 2023.**

Michael J. Truncale
United States District Judge